# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

MISSOURI INSURANCE COALITION,  )
)
    Plaintiff,  )
)
    v.  )
)       Cause No.: _____
JOHN M. HUFF  )
In his official capacity as Director of  )
the Missouri Department of Insurance,  )
Financial Institutions and Professional  )
Registration,  )
)
    Defendant.  )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

### I.    INTRODUCTION

Plaintiff has filed its complaint because the Missouri Department of Insurance, Financial Institutions and Professional Registration ("DOI"), has begun taking enforcement action under Section 376.1199 of the Missouri Revised Statutes, which (among other things) purports to require insurers to honor requests by enrollees and employers to opt out of contraception coverage. The DOI has already sought serious sanctions against Plaintiff's insurer members ("Member Insurers"), including penalties which threaten Member Insurers' ability to continue to sell and market health insurance policies in this State to many thousands of insureds.

However, Section 376.1199 directly conflicts with federal law. Section 2713 of The Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 131 (2010) and implementing regulations ("PPACA"), require that these very same health insurers, such as Member Insurers, *must* cover certain contraception methods for individual and employees insured under group health plans.

**Exhibit 1**

In light of Defendant's enforcement actions, Plaintiff files this action against Defendant to seek clarity as to the applicable (and preeminent) law. Significantly, neither Plaintiff nor its members espouse any opinion on the policy rationales behind PPACA or the conflicting Missouri law. Legislators enacted both laws, and Plaintiff's Member Insurers would comply with both laws if they could. However, Member Insurers face the untenable situation of being threatened with significant penalties by Defendant to force compliance with state laws which conflict with federal law (and, if the Member Insurers comply with state law, risk violating federal law).

In the end, applicable law guides resolution of the statutory conflict and makes the decision for the parties and this Court. It requires that federal law prevails. Further, the statutory conflict, if left unresolved through judicial intervention by this Court, will, among other things, cause continued confusion for insureds, insurers, and state and federal regulators of employers and insurance companies in Missouri. Thus, immediate relief from this Court is appropriate.[1]

## II.  **STANDARD OF REVIEW**

Rule 65(b) of the Federal Rules of Civil Procedure allows for the issuance of a temporary restraining order. Whether preliminary injunctive relief should be granted depends on an evaluation of the following factors: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest.

---

[1] "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). As noted by the Supreme Court, "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. §1331 to resolve." *Id.* Indeed, such preemption disputes are frequently resolved in a similar jurisdictional posture. *Id.* (citing *e.g.*, *Ray v. Atlantic Richfield Co.*, 435 U.S. 151 (1978); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)).

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). No one single factor is dispositive and the equitable nature of the proceeding mandates that the court's approach be flexible enough to encompass the particular circumstances of each case. *Id.* at 113-14.

However, because the basis of Plaintiff's lawsuit is that a state law is preempted by federal law and that Member Insurers will suffer irreparable harm if Defendant, acting on behalf of an agency of the State of Missouri, is not enjoined from enforcing the preempted state law, the third and fourth factors need not be considered, and Plaintiff "will be entitled to injunctive relief no matter what the harm to the State, and the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law." *Bank One, N.A. v. Guttau*, 190 F.3d 844, 847-48 (8th Cir. 1999).

The law and the evidence on each of the applicable factors fully support granting the temporary restraining order requested in the instant case.

### III.   BACKGROUND

#### A.   The Plaintiff

Plaintiff Missouri Insurance Coalition is a domestic non-profit corporation organized under Missouri's General Not-For-Profit Corporation Law for purposes of, among other things: trade association, research and education, and to perform those activities in the arena of governmental and public affairs which would improve the business conditions of the insurance industry in Missouri. Plaintiff's member organizations include Missouri health insurance companies licensed to do business in the State of Missouri. Some of Plaintiff's members are among the largest health insurance insurers in Missouri, offering products to hundreds of thousands of Missouri's insureds.

**B.**     **Missouri's Contraception Law and Defendant's Enforcement Actions**

1.     **The Patient Protection and Affordable Care Act**

The Patient Protection and Affordable Care Act was enacted and signed into law by President Obama in 2010.  Pub. L. No. 111-148, 124 Stat. 119 (2010), as amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010). The law was recently upheld as constitutional by the United States Supreme Court. *Nat. Fed'n. of Indep. Bus. v. Sebelius*, 132 S.Ct. 2566 (2012).

Section 1001 of PPACA added section 2713 to the Public Health Service Act (PHS Act). *See* 42 U.S.C. § 300gg-13.  This statute (as codified) provides that "[a] group health plan and a health insurance issuer offering group or individual health insurance coverage *shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for*— . . . with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [HRSA] for purposes of this paragraph."  42 U.S.C. § 300gg-13(a)(1), (4) (emphasis added). "Without cost sharing" in this context means free of cost to the patient.

The federal government issued interim final regulations implementing this preventive services coverage provision on July 19, 2010, requiring a group health plan or health insurance issuer offering non-grandfathered health coverage to provide, without cost sharing, the recommended preventive services for plan years beginning on or after one year from the date the recommendation was issued. *See Interim Final Rules for Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act*, 75 Fed. Reg. 41,726, 41,728–41,729 (July 19, 2010).  The interim final regulations state that when new recommendations or guidelines for preventive health services are issued, coverage for those services "*must be provided* for plan years (in the individual market,

policy years) beginning . . . one year after the date the recommendation or guideline is issued." 75 Fed. Reg. 41,726, 41,729 (emphasis added).[2]

On August 1, 2011, HRSA adopted recommendations for preventive services for women that include certain services related to contraception. *See* HRSA, *Woman's Preventive Services: Required Health Plan Coverage Guidelines,* http://www.hrsa.gov/womensguidelines/.[3]   The government then published amendments to the interim final regulations that took effect on that same date (i.e., August 1, 2011). *See Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act*, 76 Fed. Reg. 46,621 (Aug. 3, 2011).   A subsequent amendment was added to the regulations to exempt certain "religious employers" from being subject to the contraception mandate.[4]

---

[2] "The requirements to cover recommended preventive services without any cost-sharing requirements do not apply to grandfathered health plans." 75 Fed. Reg. 41,726, 41,729 (citing 26 C.F.R. §54.9815-1251T; 29 C.F.R. 2590.715-1251; 45 C.F.R. §147.140).   Grandfathered health plans are defined as plans "in which an individual was enrolled on March 23, 2010," and which are able to comply with certain regulations. *See* 26 C.F.R. §54.9815-1251T; 29 C.F.R. 2590.715-1251; 45 C.F.R. §147.140.   A recent survey found that 90% of all large U.S. companies expect that their health plans will lose grandfathered status by 2014. Stephen Miller, *Nine of 10 Big Companies Expect to Lose Grandfathered Status*, Society for Human Resources Management (Aug. 20, 2010), http://www.shrm.org/hrdisciplines/benefits/Articles/Pages/ GrandfatherStatus.aspx. Thus, it appears that even the grandfathered plans will eventually lose their grandfathered status and distinctions between the two types of plans will eventually disappear.

[3] The HRSA enlisted the Institute of Medicine ("IOM"), an independent, non-profit organization established under the National Academy of Sciences, to develop the recommendations for the HRSA guidelines. *See* Institute of Medicine, *Clinical Preventative Services for Women: Closing the Gaps* 1 (2011). The IOM issued a report that recommended the HRSA guidelines include, among other things, "the full range of Food and Drug Administration ['FDA']-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity." *Id.* at 3.   FDA-approved contraceptive methods, in turn, are found to include oral contraceptives, "emergency contraception" (such as "Plan B" and "Ella"), and intrauterine devices. FDA, Birth Control Guide 10–12, 16–19 (2012), *available at* http://www.fda.gov/ForConsumers/ByAudience/ForWomen/FreePublications/ UCM282014.pdf.

[4] A "religious employer" is one that: "(1) Has the inculcation of religious values as its purpose; (2) primarily employs persons who share its religious tenets; (3) primarily serves

Thus, the amended interim final regulations require non-grandfathered plans that do not fall within the limited exemption for "religious employers" to provide coverage for the contraceptive services recommended by HRSA "for plan years (in the individual market, policy years) beginning . . . one year after the date the [contraceptive services] recommendation or guideline [was] issued," *i.e.*, August 1, 2012. *See* 75 Fed. Reg. 41,726, 41,729. On February 15, 2012, the government published rules that "finalize[d], without change," these amended interim final regulations. *Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act*, 77 Fed. Reg. 8725 (Feb. 15, 2012). As a result, except for grandfathered plans and "religious employers," PPACA, which incorporates the HRSA guidelines, mandates that all health insurance issuers (like Member Insurers) provide individual and group health insurance coverage for contraception at no cost. *See* 42 U.S.C. § 300gg-13(a)(4).

2.    **Missouri's Conflicting Contraception Coverage Law**

In apparent response to this federal mandate imposed by PPACA regarding contraception coverage, the Missouri legislature passed a new law, Senate Bill 749 ("S.B. 749"), that allows, among other things, employers and individual insureds to opt out of covering contraceptives in health insurance policies for religious or other reasons. *See* Elizabeth Crisp, *Birth Control Opt-Out is Preserved: Missouri Legislators Override Nixon's Veto of Bill for Religious Exemptions*, St. Louis Post-Dispatch, Sept. 13, 2012, at A1.

In relevant part, S.B. 749 repealed Section 376.1199 of the Missouri Revised Statutes and replaced it with a "new" Section 376.1199 (although most of the language of Section 376.1199

---

persons who share its religious tenets; and (4) is a non-profit organization under section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Code. Section 6033(a)(3)(A)(i) and (iii) refer to churches, their integrated auxiliaries, and conventions or associations of churches, as well as to the exclusively religious activities of any religious order." 76 Fed. Reg. 46621, 46623; *see also* 45 C.F.R. §147.130(a)(1)(iv).

6

remained the same). S.B. 749 also enacted a new statutory section, Section 191.724. S.B. 749, 96th Gen. Assemb. 2d Reg. Sess. (Mo. 2012). Sections 376.1199 and 191.724 are collectively referred to herein as "Missouri's Contraception Coverage Law."

Among other things, Missouri's Contraception Coverage Law provides as follows:

(1)   Requires that any health insurance company offer and issue to any person or entity a health benefit plan which "excludes coverage for contraceptives if the use or provision of such contraceptives is contrary to the moral, ethical or religious beliefs or tenets of such person or entity." Mo. Rev. Stat. § 376.1199.4(1) (2012);

(2)   Upon the request of an enrollee who is a member of a group health benefit plan and who states that the use or provision of contraceptives is contrary to his or her moral, ethical or religious beliefs, requires that any health insurance company issue to or on behalf of an enrollee a policy which excludes coverage for contraceptives. § 376.1199.4(2);

(3)   Except in certain situations not relevant here, a health insurance carrier must allow enrollees in a health benefit plan which excludes contraceptives pursuant to Subsection 4 to "purchase" a health benefit plan that includes coverage for contraceptives. § 376.1199.5;

(4)   Requires certain notice provisions in health benefit plan applications, group contracts and on the enrollment form (and accompanying materials to the enrollment form) specifying (a) that an enrollee in a group health plan with coverage for contraceptives has the right to exclude coverage for contraceptives if such coverage is contrary to his or her moral, ethical or religious beliefs; and (b) that an enrollee who is in a group health plan which excludes coverage for contraceptives has the right to purchase coverage for contraceptives. § 376.1199.6(2)-(3).

The Missouri General Assembly voted to override the Governor's veto of S.B. 749 on September 12, 2012. Section 376.1199 became effective October 12, 2012.

3.   **DOI's Enforcement Actions**

On September 14, 2012, the DOI issued Insurance Bulletin 12-02 (Ex. 1 to Verified Complaint), proclaiming that Section 376.1199, R.S. Mo., would become effective October 12, 2012, and advising that all health insurers in Missouri should "ensure compliance" with this law. On October 12, 2012, the DOI issued Insurance Bulletin 12-03 (Ex. 2 to Verified Complaint) and

proclaimed, among other things, the requirements of Section 376.1199, R.S. Mo., and, further, declared that the DOI would only approve filings that are compliance with the same.

Subsequently, the DOI has taken actual enforcement actions against Missouri insurers (including Plaintiff's members) which include, among other things, the following:

- filing an enforcement action, and entering orders, against at least one of the Member Insurers based on allegations that such insurer violated and continues to violate Missouri's Contraception Coverage Law, and requesting, among other things, such insurer to pay civil penalties or risk forfeiture relating to such purported violations;

- threatening additional enforcement action against other health insurers, including Member Insurers;

- forcing health insurers, including Member Insurers, to respond to market conduct interrogatories by, among other things, detailing the steps taken to comply (and to provide verifying evidence of compliance) with Missouri's Contraception Coverage Law pursuant to Section 374.190, R.S. Mo.; and

- refusing to approve group contracts, employer applications, and enrollment forms filed with the DOI unless such documents comply with Missouri's Contraception Coverage Law.

As expressed in one or more of those enforcement actions, it is the DOI's current position that Missouri law requires health insurers to issue to any person or entity purchasing a plan that provides obstetrical/gynecological benefits and prescription drug benefits, a plan that excludes coverage for contraceptives if the use of contraceptives is contrary to the moral, ethical or religious beliefs or tenets of the person or entity pursuant to Section 376.1199.

It is the DOI's position that an insurer's failure to fully comply with Section 376.1199.6 constitutes unlawful misrepresentation, concealment, and suppression of material facts from policy holders and applicants about their rights under Section 376.1199, including the right to exclude contraceptive coverage. Further, the DOI has indicated that civil penalties and costs of investigation can be obtained against an insurer which does not comply with Section 376.1199.

To date, the DOI has not provided (and Plaintiff believes cannot provide) clarification about how to comply with both state and federal law (and, the contraceptive coverage mandate contained therein) at the very same time.

## IV.   ARGUMENT

**A.   Plaintiff is Entitled to a Temporary Restraining Order to Enjoin Defendant from Enforcing Mo. Rev. Stat. § 376.1199.**

     **1.   Plaintiff is Likely to Succeed on The Merits of its Claim Because Federal Law Preempts the Missouri Statute.**

Plaintiff is likely to succeed on the merits of its claim; Missouri law directly conflicts with federal law. Federal law provides that all individuals and employer groups be provided contraception coverage. State law requires individuals and groups be permitted to elect out of contraceptive coverage.

The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Thus, state law that conflicts with federal law has no effect. *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). The inquiry into the scope of a statute's pre-emptive effect is guided by the rule that "'the purpose of Congress is the ultimate touchstone' in every pre-emption case." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103 (1963)).

There are various ways in which Congress may manifest its intent to preempt state law. *Nordgren v. Burlington N. R.R. Co.*, 101 F.3d 1246, 1248 (8th Cir. 1996). First, Congress may explicitly state its intent in the federal law at issue, creating express preemption. *Id.* Second, Congress may preempt a field of law impliedly where the scheme of regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* (citing *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982). Finally,

preemption may exist where a state law conflicts with federal law, such as "where it is 'impossible for a private party to comply with both state and federal requirements' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)). Therefore, "where a state statute conflicts with, or frustrates, federal law, the former must give way." *Id.* (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993)).

In addition to Congress itself, "a federal agency acting within the scope of its congressionally delegated authority may [also] pre-empt state regulation." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986). Accordingly, in determining the congressional intent behind a statute, "courts may consider the statute itself and any regulations enacted pursuant to the statute's authority." *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 792 (8th Cir. 2009).

The clearest indication that state law is supplanted by federal law is a statutory preemption provision. *Jones v. Vilsack*, 272 F.3d 1030, 1034 (8th Cir. 2001). When Congress expressly codifies its preemptive intent in statutory form, the preemption analysis "begins with the language of the statute." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001).

PPACA contained the following preemption provision:

(1) Subject to paragraph (2)[5] and except as provided in subsection (b),[6] this part [42 U.S.C.S §§ 300gg et seq.] and part C [42 U.S.C.S §§ 300gg-91 et seq.] insofar as it

---

[5] Paragraph (2) of the statute (entitled "Continued preemption with respect to group health plans") provides that "[n]othing in this part [42 U.S.C.S §§ 300gg et seq.] shall be construed to affect or modify the provisions of section 514 of the Employee Retirement Income Security Act of 1974 [29 U.S.C.S §1144] with respect to group health plans." 29 U.S.C. § 1144 provides for the general preemption of state law with respect to plans covered under ERISA. *See* 29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."). Thus, Missouri's Contraception Coverage Law would also be preempted under ERISA insofar as self-insured group health plans are concerned.

relates to this part [42 U.S.C.S §§ 300gg et seq.] shall not be construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement solely relating to health insurance issuers in connection with individual or group health insurance coverage *except to the extent that such standard or requirement prevents the application of a requirement of this part [42 U.S.C.S §§ 300gg et seq.].*

42 U.S.C. § 300gg-23(a)(1) (emphasis added).  This preemption provision allows States to implement their own standards and requirements on health insurance issuers "*except to the extent that such standard or requirement prevents the application of a requirement*" under 42 U.S.C. §§ 300gg *et seq. Id.* (emphasis added).

As discussed herein, the federal contraception mandate is provided in 42 U.S.C. § 300gg-13 and its implementing regulations.  Thus, the preemption provision in 42 U.S.C. § 300gg-23(a), by its express terms, makes clear that no State may implement a standard or requirement that prevents the application of the contraception mandate.  The Missouri statute is expressly preempted because it imposes requirements (including several "notice" requirements) that prevent the application of the contraception mandate.

Further, even in the absence of the type of express pre-emptive language which exists in PPACA, "[p]re-emptive intent may . . . be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, *or if there is an actual conflict between state and federal law*." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (emphasis added).  "Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143 (1963), or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).

---

[6] Subsection (b) provides for express preemption of state laws relating to coverage for pre-existing conditions, which is not relevant here.

Here, even setting aside PPACA's express preemption provision, there is an "actual conflict" between PPACA and Missouri law, and compliance with both laws would be "impossible." PPACA provides that "a health insurance issuer offering group or individual health insurance coverage ***shall, at a minimum*** provide coverage for and ***shall not impose any cost sharing requirements*** for— . . . with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration . . . ." 42 U.S.C. § 300gg-13(1), (4) (emphasis added). Those HRSA guidelines currently provide for "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity." HRSA, *Women's Preventive Services: Required Health Plan Coverage Guidelines*, http://www.hrsa.gov/womensguidelines/.[7]   Thus, PPACA unambiguously mandates that health insurance issuers, like Member Insurers, "at a minimum" provide health insurance plans that cover all FDA-approved contraceptive methods, without any cost sharing. *Id.*; 42 U.S.C. § 300gg-13(1), (4).

In direct contrast to the federal law, the Missouri Contraception Coverage Law requires health insurance issuers, including Member Insurers, to offer health insurance plans *without* contraception coverage to any entity or person that has a "moral, ethical or religious" objection to such coverage. Mo. Rev. Stat. § 376.1199.4(1)-(2).  A health insurance carrier must allow enrollees in a health benefit plan which excludes contraceptives pursuant to Subsection 4 to "purchase" a health benefit plan that includes coverage for contraceptives. Mo. Rev. Stat. § 376.1199.5. The Missouri Contraception Coverage Law also requires "clear and conspicuous" written notice that of the forgoing rights. Mo. Rev. Stat. § 376.1199.6(2)-(3).

---

[7] Again, the only exceptions are for grandfathered plans and with respect to "religious employers." However, the DOI has not confined any part of its enforcement action to those exempted entities.

Quite simply, as interpreted by the DOI, it would be impossible for Member Insurers to comply with both federal and Missouri law. If Member Insurers comply with federal law and require contraceptive coverage in all plans, they become subject to enforcement actions and civil penalties by the State of Missouri (as demonstrated by the present DOI enforcement actions). If Member Insurers comply with Missouri's Contraception Coverage Law by honoring requests to exclude contraception coverage (or to even allow an individual in a group plan which excludes contraception coverage to purchase such coverage in violation of the no "cost-sharing" mandate in PPACA), then Member Insurers are being forced to stand in violation of federal law. This creates an actual conflict between the statutes, which requires state law to yield. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("[S]tate law is naturally preempted to the extent of any conflict with a federal statute."). Thus, Mo. Rev. Stat. § 376.1199 is preempted by PPACA.

Plaintiff is likely to succeed on the merits of its claim that PPACA preempts Section 376.1199 of the Missouri Revised Statutes. The first factor for issuing immediate injunctive relief weighs heavily in Plaintiff's favor.

2. **Plaintiff's Members Will Be Irreparably Harmed If The Court Does Not Issue The Requested TRO, And The Injury To Plaintiff's Members Far Outweighs Any Harm a TRO Might Cause Defendant.**

a. **Plaintiff's Members Will Suffer Imminent and Irreparable Harm if the TRO is Not Issued.**

The harm to Member Insurers if the Court does not issue the requested, immediate injunctive relief to prevent Defendant from enforcing the requirements imposed by Mo. Rev. Stat. 376.1199 against Member Insurers is imminent and irreparable.

As discussed herein, Member Insurers stand to operate in violation of federal law if they are forced to adhere to Missouri's Contraception Coverage Law. That alone is irreparable harm,

and moreover can expose Member Insurers to potential liability under federal law.[8]   Member Insurers should not be forced to violate and otherwise risk exposure under federal law merely to comply with state law.

Moreover, the "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury." *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003). The mere institution of Defendant's enforcement actions against Member Insurers (which are public proceedings), with allegations of wrongdoing, likely has caused harm to Member Insurers' reputations and goodwill in Missouri. However, the extent of such reputational harm (and harm to Member Insurers' goodwill) is unknown and unquantifiable. This substantial and irreparable harm to Member Insurers further warrants the issuance of the TRO.

Further, effective August 1, 2012, Member Insurers revised policies, contracts and forms and implemented processes at great expense to comply with PPACA's contraceptive mandate. This was indeed what the DOI had suggested was required in Insurance Bulletin 10-05 (dated September 23, 2010) (attached hereto as Ex. 1). *The DOI even approved PPACA compliant forms for use in August and September 2012 despite the fact that former Section 376.1199 contained materially similar language to that same law now being enforced by the DOI.* Insureds of Member Insurers applied for new policies based on PPACA compliant forms

---

[8] Among other enforcement mechanisms, the Secretary of Health and Human Services (HHS) is charged with enforcing the provisions of PPACA. PPACA provides that if the HHS determines "that a State has failed to substantially enforce a provision (or provisions) in this part [42 U.S.C.S §§ 300gg et seq.] with respect to health insurance issuers in the State, the Secretary [HHS] *shall enforce* such provision (or provisions) . . . ." 42 U.S.C. §300gg-22(a)(2) (emphasis added). The stated enforcement penalties could be substantial, subjecting violators to a civil money penalties of up to "$ 100 for each day for each individual with respect to which such a failure occurs." 42 U.S.C. §300gg-22(b)(2)(C)(i). There appears to be additional exposure under ERISA for violations of PPACA. ERISA incorporates PPACA with respect to "health insurance issuers providing health insurance coverage in connection with group health plans." *See* 29 U.S.C. §1185d(a)(1). Not only is ERISA enforced by the Department of Labor, but participants and beneficiaries also can file lawsuits under ERISA against insurers. 29 U.S.C. §1132(a).

approved by the DOI. Now the DOI is requiring Member Insurers to change their contracts and forms again in order to comply with an unconstitutional state law. To the extent these new plans and affected materials are circulated to the public (as being directed by the DOI), this will only engender more confusion in the marketplace, thus increasing customer abrasion for Member Insurers. (If the DOI is not *now* restrained, thus forcing injection of this new round of employer applications and enrollment forms as required under penalty of enforcement action by the DOI, a subsequent unconstitutional finding vis-à-vis Missouri's Contraception Coverage Law would add even more confusion and abrasion as the Member Insurers would need to circle back to their customers to comply with PPACA yet again. The need for an immediate, definitive ruling is indeed manifest.)

Compounding the irreparable harm to Member Insurers is the fact that they likely have no recourse against Defendant should they prevail in an administrative enforcement action pursued by the DOI or otherwise successfully demonstrate that the Missouri Contraception Coverage Law is preempted and/or violates the Supremacy Clause of the U.S. Constitution.[9] Simply put, neither Plaintiff nor Member Insurers are likely to be able to recover damages from Defendant should Missouri's Contraception Coverage Law be deemed preempted.

---

[9] Member Insurers apparently have no ability to recover monetary damages in a wrongful enforcement action against the DOI due to the protections afforded the DOI under the Eleventh Amendment. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (absent waiver of Eleventh Amendment immunity, neither state nor its agencies may be subject to suit in federal court). "Where a plaintiff cannot recover damages from the defendant due to the defendant's sovereign immunity, any economic loss suffered by a plaintiff is irreparable per se." *Air Conditioning, Heating & Refrigeration Inst. v. City of Albuquerque*, 2008 U.S. Dist. LEXIS 106706, *14 (D.N.M. Oct. 3, 2008) (citing *Kansas Health Care Ass'n, Inc. v. Kan. Dep't of Soc. and Rehab. Servs.*, 31 F.3d 1536, 1543 (10th Cir. 1994) ("Because the Eleventh Amendment bars a legal remedy in damages, and the [district] court concluded no adequate state administrative remedy existed . . . plaintiff's injury was irreparable"); *United States v. New York*, 708 F.2d 92, 93-94 (2d Cir. 1983) (finding irreparable injury where plaintiff was unable to recover damages in federal court due to the defendant's invocation of the protections of the Eleventh Amendment). This further demonstrates the irreparable harm to Member Insurers if the DOI's wrongful enforcement action is continued.

In sum, Member Insurers will be exposed to substantial liability and irreparable harm if Defendant is not immediately restrained from enforcing Missouri's Contraception Coverage Law against Member Insurers. Thus, the second factor for issuance of the TRO also weighs heavily in Plaintiffs' favor.

      b.      **Any Harm that Defendant May Suffer from Issuance of the TRO is Irrelevant, and, Regardless, Defendant Would Suffer No Harm.**

Since this is a preemption claim, the harm to Defendant is not relevant to the analysis of whether an injunction or restraining order is proper. *Bank One, N.A. v. Guttau,* 190 F.3d 844, 847 (8th Cir. 1999). Where, as here, a plaintiff establishes that a state law is preempted by federal law and the plaintiff "will suffer irreparable harm if the State is not enjoined from enforcing those provisions, then the question of harm to the State and the matter of the public interest drop from the case, for [the plaintiff] will be entitled to injunctive relief no matter what the harm to the State, and the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law." *Id.* at 847-48. Therefore, Plaintiff and Member Insurers would be entitled to the requested injunctive relief regardless of the amount of harm that Defendant contends the DOI would suffer upon issuance of the injunction.

Nevertheless, even assuming *arguendo* potential harm to Defendant should be considered, such consideration only reinforces the propriety of an injunction. In fact, Defendant will not be harmed at all from the issuance of a TRO. If the Missouri law that Defendant now is attempting to enforce against Member Insurers is unconstitutional because it is preempted by federal law, Defendant has no right to enforce the state law in the first place. *See White v. Martin,* 2002 U.S. Dist. LEXIS 27281, at *22 (W.D. Mo. Oct. 3, 2002) ("Compliance with the law does not pose a burden on a defendant."). There also is no conceivable harm to Defendant

by merely preventing Defendant (and other Missouri state officials) from temporarily suspending their enforcement of an unconstitutional law.[10]

Even in the unlikely event that the Court ultimately concludes that the Missouri law is not preempted by PPACA, Defendant then can proceed with enforcing Missouri's Contraception Coverage Law.  Defendant suffers no harm either way.  Accordingly, the second and third factors for issuance of the TRO also weigh heavily in Plaintiff's favor.

**3.  The Public Interest Will Be Served By the Entry Of a TRO.**

The public-interest factor also need not be taken into account where a party seeks relief to enjoin enforcement of a state law because it is preempted by a federal law under the Supremacy Clause. *Guttau*, 190 F.3d at 847.

Regardless, and even assuming the public interest factor should be considered, the entry of immediate injunctive relief is overwhelmingly in the public interest.  First and foremost, and among other things, insureds, employers and insurers in this State need immediate clarification as to the scope of preemption occasioned by PPACA vis-à-vis the obligations and rights under Missouri's Contraception Coverage Law.  Indeed, it is axiomatic that "[t]he public interest is best served by enjoining Missouri from enforcing a preempted statute." *Lankford v. Sherman*, 2007 U.S. Dist. LEXIS 14950, *13 (W.D. Mo. Mar. 2, 2007).  The "Court, and the public generally, cannot allow state action which conflicts with Congressional law.  To hold otherwise would

---

[10] As stated (*supra*, p. 14), Plaintiff notes that the portions of Section 376.1199 now being enforced by the DOI under Missouri's Contraception Coverage Law existed in substantially similar form as Section 376.1199 existed prior to S.B. 749.  Nevertheless, prior to the effective date of S.B. 749, the DOI did not institute enforcement actions with respect to Section 376.1199 like it currently is doing.  Indeed, and to the contrary, as stated above, the DOI approved forms for use after August 1, 2012 (the effective date of the contraceptive mandate in PPACA) which complied with PPACA even though, at the same time, *former* Section 376.1199 existed in substantially similar form to Section 376.1199 as amended by S.B. 749.  In sum, the DOI has not historically enforced Section 376.1199 like it is doing presently, and this demonstrates the lack of any significant harm to Defendant from a temporary cessation of enforcement of Section 376.1199 to the conclusion of this expedited proceeding.

insulate states from injunctions seeking the stay of an improper enactment of [federal] requirements." *Id.*

Also, ordering (as the DOI has done to at least one of the Insurer Members) a Missouri insurance company to cease and desist selling and marketing insurance policies unless such policies (and affected materials) comply with the invalid state law also harms the public interest, in that it deprives the public of needed and popular products and services in the market which could (but for Missouri's Contraception Coverage Law) be available and compliant with federal law. The membership for Member Insurers' products is substantial in this State. Missouri insureds are entitled to select the products they want and which comply with applicable (and, in the case of a federal/state conflict, supreme) law.

Therefore, the final factor – the public interest – also substantially favors the issuance of the immediate injunctive relief requested by Plaintiff, even assuming it is relevant for this Court's consideration.[11]

## V.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that a Temporary Restraining Order be issued against Defendant in the form submitted in conjunction with Plaintiff's accompanying Motion and for such other relief as is just and proper.

---

[11] The federal rules provide that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Because there would be no conceivable costs or damages that would be sustained by Defendant upon issuance of the TRO, Plaintiff respectfully requests that the TRO be issued without any security or bond, or upon the posting by Plaintiff of security in the amount of no more than one dollar ($1.00). *See Lankford*, 2007 U.S. Dist. LEXIS 14950, at *15-16 (noting that a court may determine the amount of a security as it "deems proper" and ordering the plaintiffs to post a bond of one dollar).

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By:_____/s/ David W. Gearhart_____
        Neal F. Perryman, #43057MO
        David W. Gearhart, #50292MO
        600 Washington Avenue, Suite 2500
        St. Louis, Missouri 63101
        Telephone:  314-444-7600
        Facsimile:  314-612-7394
        E-mail:  nperryman@lewisrice.com
        E-mail:  dgearhart@lewisrice.com

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served upon the following on this 19th day of December, 2012, in the following manner:

**Via Facsimile (573-751-1165) and Federal Express**
John M. Huff
Director
Missouri Department of Insurance
301 West High Street, Rm. 530
Jefferson City, MO 65101

Director, Missouri Department of Insurance


**Via E-mail and Federal Express**
Chris Koster
Missouri Attorney General
Supreme Court Building
207 West High St.
P.O. Box 899
Jefferson City, MO 65102
attorney.general@ago.mo.gov

Attorney General State of Missouri


**Via E-mail and Federal Express**
Stewart M. Freilich
Missouri Department of Insurance, Financial
Institutions and Professional Registration
301 West High Street, Room 530
Jefferson City, Missouri 65101
Stewart.freilich@insurance.mo.gov

Attorney for Insurance Market Regulation Div.
Missouri Department of Insurance

                                              /s/ David W. Gearhart