IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MISSOURI INSURANCE COALITION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:12-cv-02354-AGF ) |
| JOHN M. HUFF, et al., | ) ) |
| Defendants. | ) |

SUGGESTIONS IN SUPPORT
OF SECOND MOTION TO INTERVENE

**I. Introduction**

Pursuant to Federal Rule of Civil Procedure 24(a), Our Lady's Inn moves to intervene as of right as a defendant for the purposes of filing an appeal. In the alternative, Our Lady's Inn moves to intervene permissively pursuant to Rule 24(b). Although Our Lady's Inn previously moved to intervene, and said motion was denied, Our Lady's Inn now moves to intervene on new grounds.

Our Lady's Inn, an organization that offers support to women in pregnancy crises, provides insurance coverage to its employees and would like to opt out of contraceptive coverage pursuant to Missouri Revised Statute Section 376.1199. As a non-profit entity with a stated objection to insurance coverage for contraceptives, Our Lady's Inn is, like many entities, eligible for an exemption from the Patient Protection and Affordable Care Act's ("PPACA") contraceptive mandate ("Mandate").

On March 14, 2013, the Court entered a judgment declaring invalid the portions of Section 376.1199 that allow an entity such as Our Lady's Inn to request—and have the request honored—that their employee insurance policies exclude coverage for contraceptives. Given this

judgment, Our Lady's Inn has no way of ensuring that it can obtain the insurance the PPACA says it can get—that is, without contraceptive coverage.

The defendant in the case at bar, Director of Insurance John M. Huff, has not yet appealed the Court's March 14, 2013 decision, and has indicated that he may not appeal at all or may appeal only limited aspects of the decision. The interests of Our Lady's Inn would be wholly unrepresented without a comprehensive appeal, and thus Our Lady's Inn seeks to intervene and file an appeal.

## II.  Factual Background[1]

Our Lady's Inn was organized in September of 1980 as a Missouri nonprofit corporation, which is still how it operates today. Our Lady's Inn strives to provide a safe and loving home for homeless pregnant women who feel that they have no alternative to abortion. Our Lady's Inn also provides counseling, nursing care and various other services to women in pregnancy crises. When a family leaves Our Lady's Inn, two years of "aftercare" case management are offered.

Our Lady's Inn considers the services it provides to be an alternative to abortion, to which it of course objects. It similarly objects to the use of contraceptives. It is also the belief of Our Lady's Inn that certain FDA-approved contraceptives, such as the drugs known commonly as the "morning after pill" and "week after pill," can and do act to cause abortions.

Our Lady's Inn provides health insurance coverage to its employees. Historically, Our Lady's Inn's plan excluded coverage for contraceptives. In 2010, however, Our Lady's Inn's health insurance provider informed it that either (a) contraceptives would be covered, or (b) there could be no prescription drug plan at all. Our Lady's Inn surrendered to its provider's ultimatum and continued providing coverage with contraceptives being covered, but has since sought ways

---

[1] Our Lady's Inn's history has been more fully detailed in prior memoranda. Any factual assertions are supported by the Declaration of Peggy Forrest, Executive Director of Our Lady's Inn, which was filed with Our Lady's Inn's suggestions in support of its first motion to intervene. Doc. 34-1.

2

to continue the insurance without contraceptive coverage. It has had some success, thanks to Section 376.1199, R.S. Mo. Although Our Lady's Inn finally succeeded in obtaining contraceptive-free coverage in May of 2012, insurance providers have largely been unwilling to stray from one-size-fits-all plans that include coverage for contraceptives. Section 376.1199, which required insurers to honor requests by enrollees and employers to elect out of contraceptive coverage, provided Our Lady's Inn a mechanism for providing insurance coverage in a manner that is consistent with its mission and its leadership's moral and religious beliefs.

The Plaintiffs filed suit to enjoin the enforcement of Section 376.1199. The Court entered a declaratory judgment in the Plaintiffs' favor finding that Section 376.1199 was preempted by the PPACA. The judgment declared invalid the portions of Section 376.1199 that allow an entity such as Our Lady's Inn to request—and have the request honored—that their employee insurance policies exclude coverage for contraceptives.

The defendant in the case at bar, Director of Insurance John M. Huff, has not yet appealed the Court's March 14, 2013 decision, and in response to an inquiry by Our Lady's Inn, has indicated that he may not appeal at all or may appeal only limited aspects of the decision. Our Lady's Inn's interests would be wholly unrepresented without a comprehensive appeal, and thus Our Lady's Inn seeks to intervene and file an appeal.

### III. Argument

Rule 24 is "to be liberally construed with all doubts resolved in favor of the proposed intervenor." *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003); *Scott v. United States*, 2011 WL 690210, *2 (E.D. Mo. 2011); *see also Sierra Club v. Robertson,* 960 F.2d 83, 86 (8th Cir. 1992) (doubts resolved in favor of proposed intervenor); *Arkansas Elec. Energy Consumers v. Middle S. Energy, Inc.,* 772 F.2d 401, 404 (8th Cir. 1985)

3

(Rule 24 is to be liberally construed); *Corby Recreation, Inc. v. General Electric Co.,* 581 F.2d 175, 177 (8th Cir. 1978) (doubts should be resolved in favor of proposed intervenor); *Kozak v. Wells,* 278 F.2d 104, 111-12 (8th Cir.1960) (Rule 24 is to be liberally construed).

### A. Our Lady's Inn is entitled to intervene as of right under Rule 24(a)(2).

To intervene as of right, the moving party must demonstrate the following: (1) its application is timely; (2) it has an interest relating to the property or transaction that is the subject of the action; (3) it is so situated that the disposition of the action, as a practical matter, may impede or impair its ability to protect that interest; and (4) its interest is represented inadequately by existing parties. Fed. R. Civ. P. 24(a)(2); *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003).

### 1. Our Lady's Inn's motion is timely.

In an oft-cited opinion, the United States Court of Appeals for District of Columbia addressed the timeliness of a post-judgment motion to intervene. *See Wolpe v. Poretsky*, 144 F.2d 505 (D.C. Cir. 1944). In *Wolpe*, the plaintiff sued to enjoin members of a zoning commission from carrying into effect a zoning order that would prevent the erection of apartment houses on a certain piece of land. *Id*. at 506. The district court granted the injunction, and the zoning commission decided not to appeal. *Id*. Adjoining property owners moved to intervene in order to pursue an appeal, claiming they would be seriously injured by the erection of an apartment house on the land. *Id*. at 507. The district court denied the motion to intervene, finding, *inter alia*, that intervention could not be allowed after final judgment. *Id*.

The D.C. Circuit reversed the district court's decision, stating as follows:

> The application to intervene was timely. Intervention may be allowed after a final decree where it is necessary to preserve some right which cannot otherwise be protected. Here at least one of the rights which cannot be protected without intervention is the right of appeal. The court was, therefore, in error in denying appellants leave to intervene as a matter of right.

4

> . . . When they filed their petition for intervention appellants had all the rights of a party at that stage of the proceedings. This, of course, includes the right of appeal. Since the time for appeal had not expired when appellants sought to intervene they should be made parties with the right to appeal and all other rights a party might exercise at the time their intervention was filed.

*Id*. at 508; *see also Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960) (citing *Wolpe* and recognizing right to intervention after judgment).

The Ninth Circuit Court of Appeals ruled similarly in *Pellegrino v. Nesbit*, 203 F.2d 463 (9th Cir. 1953). *Pellegrino* involved a shareholder's attempt to intervene in an action brought by a corporation against certain key employees for insider profits. *Id*. at 464-65. The court held that where the corporation's board of directors had decided not to appeal an adverse judgment, representation of the minority interest was inadequate, and the shareholder was entitled to intervene under Rule 24(a)(2). *Id*. at 466-67. The Court found that "[i]ntervention should be allowed even after a final judgment where it is necessary to preserve some right which cannot otherwise be protected," and "[s]uch a right which cannot otherwise be protected than by intervention is the right to appeal from the judgments entered on the merits by the District Court." *Id.* at 465-66.

Our Lady's Inn is situated similarly to the intervenors in *Wolpe* and *Pellegrino*. As in those cases, an adverse judgment was handed down, and the only protector of the proposed intervenor's interests—here, the Director of Insurance—is indicating an unwillingness to appeal the judgment. The only concern regarding timeliness is whether the time to appeal has run, *see Wolpe*, at 508, and here it has not.

Our Lady's Inn should be heard to ensure that its interests and the interests of the many similarly-situated entities in Missouri are adequately represented.

## 2. Our Lady's Inn has an interest relating to the property or transaction that is the subject of the action.

A party seeking to intervene must satisfy both Article III standing requirements and the interest requirement of Rule 24(a)(2). *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833-34 (8th Cir. 2009). To demonstrate standing, the proposed intervenor must establish that it has a "legally protectable interest that is 'concrete, particularized, and either actual or imminent.'" *Id*. at 384. In order for an intervenor to have the requisite interest under Rule 24(a)(2), the interest must be "direct, substantial, and legally protectable in nature." *Medical Liability Mut. Ins. Co. v. Alan Curtis, LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007); *United States v. Union Elec. Co*., 64 F.3d 1152, 1161 (8th Cir. 1995).

Our Lady's Inn has a legally protectable interest in the present matter, and the litigation affects Our Lady's Inn in a direct and substantial way. The Plaintiffs were successful in entirely dismantling the protections of Section 376.1199 and thus insurance providers are now able to force companies that the federal government has exempted from the contraceptive mandate into providing contraceptive coverage. Our Lady's Inn will now have to either abandon health coverage for its employees or accept a package, as it has been forced to do in the past, that includes contraceptive coverage—coverage which is contrary to Our Lady's Inn's mission and its leadership's moral and religious beliefs.

The Court found in its order denying Our Lady's Inn's first motion for intervention that: "Our Lady's Inn's supposition that if implementation of the state law is enjoined, insurance companies will not provide, even to exempted companies, plans that exclude contraceptive coverage is mere speculation." Order, Doc. 45, p. 4. Our Lady's Inn has demonstrated the roadblocks it has run into in the past in attempting to obtain a plan that excludes contraceptive coverage; it was eventually successful only due to its reference to Section 376.1199. This

6

reference is not available now, giving insurance companies the ability to force one-size-fits-all plans that include contraceptives upon entities like Our Lady's Inn.

The Court's characterization of Our Lady's Inn's position as "mere speculation" is further undermined by the existence of Section 376.1199 itself.  If abstract fear were the only hurdle companies like Our Lady's Inn face in attempting to get the insurance policies they want, the Missouri legislature presumably would not have had to enact a statute forcing insurance companies to cooperate.

Further, even if only some insurance companies decide that they do not want to offer any plans that exclude contraceptives, Our Lady's Inn will have lost the consumer choice and attendant competitive protections guaranteed by Section 376.1199.  Our Lady's Inn would be forced to seek out specialized providers with prices that are consistent with that specialization.

Finally, insurance companies can point to the new iteration of Section 376.1199 as requiring that they deny all requests for coverage that excludes contraceptives.  Subsection 1 of Section 376.1199, which survives, states that any plan that includes coverage for pharmaceutical benefits must provide no-cost coverage for contraceptives.  Section 376.1199's opt-out is now naught, giving insurers the right and duty to provide plans that include contraceptives.

Our Lady's Inn therefore has a legally protectable interest and enjoys Article III standing. And since Our Lady's Inn's legally protectable interest is direct and substantial, it also fulfills the Rule 24(a)(2) interest requirement.  In light of these facts, the Court should grant Our Lady's Inn intervenor status.

### 3. Disposition of the action without Our Lady's Inn may impede or impair Our Lady's Inn's ability to protect its interests.

"The purpose of intervention is to promote the efficient and orderly use of judicial resources by allowing persons, who might otherwise have to bring a lawsuit on their own to

protect their interests or vindicate their rights, to join an ongoing lawsuit instead." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009) (internal quotations omitted). The Eight Circuit has emphasized that

> [t]he rule does not require, after all, that appellants demonstrate to a certainty that their interests *will* be impaired in the ongoing action. It requires only that they show that the disposition of the action '*may* as a practical matter' impair their interests.

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist,* 738 F.2d 82, 84 (8th Cir. 1984) (emphasis in original).

As illustrated in the section above, Our Lady's Inn's interests have and will continue to be impaired if the Plaintiffs are successful in having Section 376.1199 thrown out entirely.

### 4. The existing parties do not adequately represent Our Lady's Inn's interests.

A proposed intervenor bears only a "minimal burden of showing that its interests are not adequately represented by the parties," a burden that courts consider "easy to satisfy." *Mausolf v. Babbit*, 85 F.3d 1295, 1303 (8th Cir. 1996). The adequacy of representation is determined "primarily by comparing the interests of the proposed intervenor with the interests of the current parties to the action." *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). In addition, "the inadequate representation condition is satisfied if the proposed intervenor shows that the representation of its interests by the current party or parties to the action 'may be' inadequate." *Id*. at 85-86. This element may be satisfied even when the interest of a proposed intervenor and a party are similar. *Id*. at 86 ("The 'tactical similarity' of the 'legal contentions' of a current party with that of a proposed intervenor . . . does not assure adequate representation.").

Our Lady's Inn is faced with the same problem as the intervenors in *Wolpe* and *Pellegrino*. In its denial of Our Lady's Inn's first motion to intervene, the Court stated that it was "not persuaded that the interest of Our Lady's Inn will not be adequately protected by the

current parties." Order, Doc. 45, p. 5. That protection—presumably offered by the only defendant, the Director of Insurance—was not enough to prevent a judgment adverse to Our Lady's Inn. And on appeal it appears that even that representation of Our Lady's Inn's interests will be absent as there is no reason to believe there will be an appeal.

It is therefore evident that the existing parties do not adequately represent Our Lady's Inn's interests. Since it is well established that "doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it because this serves the judicial system's interest in revolving all related controversies in a single action," this Court should grant Our Lady's Inn intervenor status. *See Sierra Club*, 960 F.2d at 86.

### B. Alternatively, permissive intervention under Rule 24(b)(2) is appropriate in this case.

Permissive intervention is allowed, in the Court's discretion, when the motion is timely and the proposed intervenor "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003); see also Fed. R. Civ. P. 24(b)(3).

The Court should grant permissive intervention because the considerations guiding the Court's exercise of its discretion weigh in favor of intervention. As demonstrated above, the interests of Our Lady's Inn are not adequately represented by the Director of Insurance. In seeking to intervene for purposes of appeal, Our Lady's Inn cannot be considered a threat to delay, because as things stand there is not extant litigation. Finally, as demonstrated above, relevant case law holds that Our Lady's Inn's motion is timely.

Accordingly, Our Lady's Inn requests permissive intervention.

## CONCLUSION

For the reasons described above, Our Lady's Inn respectfully requests that the Court grant its motion to intervene as a defendant as a matter of right pursuant to Rule 24(a), or, in the alternative, permissively pursuant to Rule 24(b).

Respectfully submitted this 5th day of April, 2013.

        Respectfully submitted,

        OTTSEN, LEGGAT AND BELZ, L.C.

By: /s/ Timothy Belz
    Timothy Belz  #MO-31808
    112 South Hanley, Second Floor
    St. Louis, Missouri 63105-3418
    Phone: (314) 726-2800
    Facsimile: (314) 863-3821
    tbelz@omlblaw.com

**Certificate of Service**

      I hereby certify that on April 5, 2013, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Eastern District of Missouri to be served by operation of the Court's electronic filing system upon the following registered CM/ECF participants:

Neal F. Perryman
David W. Gearhart
LEWIS RICE
600 Washington
Suite 2500
St. Louis, MO 63101

Jeremiah J. Morgan
ATTORNEY GENERAL OF MISSOURI
Assistant Attorney General
P.O. Box 899
Jefferson City, MO 65102-0899

                                                         /s/ Timothy Belz