IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MISSOURI INSURANCE COALITION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Cause No.: 4:12-cv-02354-AGF ) |
| JOHN M. HUFF, in his official capacity as Director of the Missouri Department of Insurance, Institutions and Professional Registration, | ) Oral Argument Requested ) ) ) ) ) |
| Defendant. | ) |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S
### MOTION TO ALTER OR AMEND THE JUDGMENT

Defendant John M. Huff, in his official capacity as Director of the Missouri Department of Insurance, Financial Institutions and Professional Registration (the "Director"), and pursuant to Eastern District Local Rule 7-4.01, submits the following Memorandum in Support of Defendant's Motion to Alter or Amend the Judgment under Fed. R. Civ. P. 59.

### INTRODUCTION

Defendant recognizes, and does not seek to relitigate or appeal, this Court's ruling regarding the supremacy of the Affordable Care Act's contraceptive coverage provisions to insurance carriers, businesses and individuals who, by their conduct, have freely chosen to enter the stream of commerce.

However, defendant asks this Court to alter or amend its judgment as applied to religious employers,[1] such as the Archdiocese of St. Louis, that have been explicitly exempted by the Obama Administration from the ACA's contraceptive mandate. Without alteration or amendment, the Court's ruling would subject Missouri's religious employers to an insurance mandate that is not required by federal law,[2] was never contemplated by the Missouri General Assembly, and cannot be supported by principles of federal preemption.

The Court's ruling inadvertently leaves insurance companies unable to sell to religious employers insurance policies that religious employers have

---

[1] *See* 45 C.F.R. § 147.130(a)(1)(iv)(B)(1)-(4) (Exempting "religious employers" from the federal contraceptive mandate. A "religious employer" is currently defined as an employer that "(1) The inculcation of religious values is the purpose of the organization. (2) The organization primarily employs persons who share the religious tenets of the organization. (3) The organization serves primarily persons who share the religious tenets of the organization. (4) The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended."); *see also* 75 Fed. Reg. 41726, 41731 (July 19, 2010) (exempting grandfathered health plans); http://cciio.cms.gov/resources/factsheets/womens-preven-02012013.html (last visited April 10, 2013) (proposing rule exempting certain non-profit, non-exempt organizations with religious objections to contraceptive services).

[2] *See* 42 U.S.C. § 300gg-13; *see also* Women's Preventative Services: Required Health Plan Coverage Guidelines, *available at* http://www.hrsa.gov/womensguidelines/ (last visited April 10, 2013); 77 Fed. Reg. 8725, 8729 (requiring health plans to provide all FDA approved contraceptive methods for the preventative care of women).

been given the right to purchase under federal law. This inconsistency in the Court's ruling should be cured.

## ARGUMENT

"A district court has broad discretion in determining whether to grant a motion to alter or amend judgment." *B.M. ex rel. Miller v. South Callaway R-II Sch. Dist.*, 2012 WL 5818001, 1 (W.D. Mo. Nov. 15, 2012) (citing Fed. R. Civ. P. 59(e)); *see also United States v. Metro. St. Louis Sewer Dist.,* 440 F.3d 930, 933 (8th Cir.2006). Rule 59(e) motions "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Metro. St. Louis Sewer Dist.,* 440 F.3d at 933. "The purpose of the Rule is to allow the district court 'the power to rectify its own mistakes in the period immediately following the entry of judgment.'" *Id.* (quoting *Norman v. Arkansas Dep't of Educ.,* 79 F.3d 748, 750 (8th Cir.1996)).

"A Rule 59(e) motion to alter or amend must show: '1) an intervening change in controlling law; 2) the availability of new evidence not available previously; or 3) the need to correct a clear error of law or prevent manifest injustice.'" *Miller*, 2012 WL 5818001, 1 (quoting *Bannister v. Armontrout,* 807 F.Supp. 516, 556 (W.D. Mo. 1991)). In this case, defendant requests that the Court alter or amend its judgment to correct a clear error of law or prevent manifest injustice.

3

### The Court Should Alter or Amend its Judgment Because the Resulting Missouri Law Provides No Exemption for Religious Employers While Federal Law Does Provide An Exemption for Such Employers.

Defendant noted in his argument to the Court that Missouri law, embodied in Senate Bill 749 and codified at § 376.1199, *et seq.*,[3] provides a broad mandate for contraceptive coverage with provisions that were in force long before the ACA was passed. (Transcript ("Tr.") p. 30 ("Missouri law would apply to and provide greater contraceptive protection than federal law.")). This contraceptive coverage in Missouri law, however, was limited by exemptions based on a person or entities' moral, ethical, or religious beliefs. *See* § 376.1199.4.

Defendant continues to maintain that Senate Bill 749 is consistent with federal law, but accepts without reargument this Court's decision that federal law preempts conflicting Missouri law as applied to insurance carriers, businesses, and individuals who, by their conduct, have freely chosen to enter the stream of commerce. In short, Walmart may not ignore selective provisions of federal or state law by claiming a religious exemption.

Even accepting preemption, however, the Court's judgment creates an unintended consequence with respect to certain religious employers that have been granted an exemption from the mandate by federal regulation and the

---

[3] All references to the Revised Statutes of Missouri will be to the 2012 Cumulative Supplement, unless otherwise indicated.

4

Obama Administration. For example, before the Court's judgment Archbishop Robert J. Carlson of the Archdiocese of St. Louis was not required to provide to direct employees of the diocese a health plan with contraceptive coverage under either federal or Missouri law. Archbishop Carlson is still not required to have such a plan under federal law. Yet, now under Missouri law (following the Court's ruling) Missouri insurance carriers cannot provide him a plan without contraceptive coverage. *See infra* § 376.1199.1(4). This was not intended by the Missouri General Assembly and is inconsistent with federal law. The Court's judgment should be altered or amended to provide exemptions consistent with federal law.

### A. General Principles of Severability Apply.

Although the Court neither discussed nor analyzed severance principles in its judgment, it implicitly applied principles of severance. After all, the Supreme Court in *Hillsborough County, Fla. v. Automated Med. Labs., Inc.* 471 U.S. 707 (1985), held that where there is a conflict state law is nullified only "to the extent that it actually conflicts with federal law." *Id.* at 713 (emphasis added); *see In re Aurora Dairy Corp. Organic Milk Mktg. and Sales Practices Litig.*, 621 F.3d 781 (8th Cir. 2010) (holding certain state law provisions preempted only "to the extent" preempted and finding some provisions preempted and not others).

5

Severance is a fundamental doctrine of judicial restraint. It derives from the notion that "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem." *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328 (2006). Otherwise, courts would frustrate "the intent of the elected representatives of the people" by striking an entire statute when only a portion is unconstitutional. *Id.* at 329. Indeed, "the presumption is in favor of severability." *Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984). And the question in this case is whether "the balance of the legislation is incapable of functioning independently" or whether the remaining "statute will function in a *manner* consistent with the intent of Congress." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (emphasis in original).

In this case, the Court severed certain provisions, but exercised severance in a way that left an unintended Missouri law that is inconsistent and more burdensome than federal law as applied to Missouri's religious employers.

### B. Preemption and Severance of Only the Exemptions in § 376.1199 Unintentionally Imposed Contraceptive Coverage on Religious Employers in Missouri Despite a Federal Law Exemption for Such Employers.

Although § 376.1199.1 mostly concerns issues not related to contraceptive coverage (*e.g.,* access to obstetricians and gynecologists as well

6

as cancer screenings and osteoporosis services), subdivision (4) provides a broad contraceptive mandate as follows:

> 1. Each health carrier or health benefit plan that offers or issues health benefit plans providing obstetrical/gynecological benefits and pharmaceutical coverage, which are delivered, issued for delivery, continued or renewed in this state on or after January 1, 2002, shall:
>
> * * *
>
> (4) If the health benefit plan also provides coverage for pharmaceutical benefits, provide coverage for contraceptives either at no charge or at the same level of deductible, coinsurance or co-payment as any other covered drug.
>
> No such deductible, coinsurance or co-payment shall be greater than any drug on the health benefit plan's formulary. As used in this section, "contraceptive" shall include all prescription drugs and devices approved by the federal Food and Drug Administration for use as a contraceptive, but shall exclude all drugs and devices that are intended to induce an abortion, as defined in section 188.015, which shall be subject to section 376.805. Nothing in this subdivision shall be construed to exclude coverage for prescription contraceptive drugs or devices ordered by a health care provider with prescriptive authority for reasons other than contraceptive or abortion purposes.

§ 376.1199.1(4).

This broad contraceptive mandate in Missouri law is connected to an exemption – stricken by the Court – which provided an exemption based on religious tenets. Similarly, § 376.1199.4(3), which was also stricken by the

7

Court based on preemption principles, again references the same contraceptive mandate under Missouri law:

> Any health carrier which is owned, operated or controlled in substantial part by an entity that is operated pursuant to moral, ethical or religious tenets that are contrary to the use or provision of contraceptives shall be exempt from the provisions of subdivision (4) of subsection 1 of this section. For purposes of this subsection, if new premiums are charged for a contract, plan or policy, it shall be determined to be a new contract, plan or policy.

§ 376.1199.4(3) (emphasis added).

Given the multiple cross-references to the contraceptive mandate under Missouri law contained in the provisions that were stricken by the Court as preempted, it is clear that the Missouri General Assembly would not have intended that the provisions be separated. *See Akin v. Dir. of Revenue*, 934 S.W.2d 295, 300 (Mo. banc 1996); *see also Alaska Airlines, Inc.*, 480 U.S. at 684-85. More specifically, it is highly unlikely that the General Assembly would have enacted a broad contraceptive provision with certain exceptions if it did not intend for those provisions to be kept together.

Additionally, if federal preemption extends to the exemptions from contraceptive coverage under Missouri law, then it should equally extend to the coverage provision as well. Otherwise, Missouri law would require contraceptive coverage where federal law has specifically excluded coverage. In short, Missourians – particularly religious employers such as the St. Louis

8

Archdiocese – should have all the protections of federal law if federal law is to preempt Missouri law.

For these reasons, defendant seeks to alter or amend the Court's judgment regarding § 376.1199 so that it is clear that the federal exemptions from contraceptive coverage are applicable to Missouri law, such as by adding the following language to the Memorandum and Order:

> The Court recognizes, however, that federal statutes and regulations have created and may in the future expand or create exemptions for some employers, permitting them to purchase policies that exclude contraceptive coverage. *E.g.*, 45 C.F.R. § 147.130(a)(1)(iv)(B)(1)-(4); 75 Fed. Reg. 41726, 41731 (July 19, 2010). To the extent of any such exemptions, subdivisions (1) and (4) of § 376.1199 are not in conflict with federal law and are not preempted. The State of Missouri may require that covered insurance carriers or providers in Missouri offer health benefit plans without contraceptive coverage to those employers or entities that are exempt from federal requirements, such as those defined by federal regulation as "religious employers."

## CONCLUSION

For the foregoing reasons, Defendant John M. Huff, in his official capacity as Director of the Missouri Department of Insurance, Financial Institutions and Professional Registration, requests that the Court alter or amend its Judgment.

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

By:  /s/ *Jeremiah J. Morgan*
      Jeremiah J. Morgan, Mo. #50387
      Deputy Solicitor General
      P.O. Box 899
      Jefferson City, MO 65102
      (573) 751-1800
      (573) 751-0774 (facsimile)
      Jeremiah.Morgan@ago.mo.gov

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was filed with the CM/ECF system and served upon the following on this 11th day of April, 2013:

    Neal F. Perryman
    David W. Gearhart
    600 Washington Avenue, Suite 2500
    St. Louis, Missouri  63101
    E-mail:  nperryman@lewisrice.com
    E-mail:  dgearhart@lewisrice.com

    *Attorneys for Plaintiffs*

                                             /s/ *Jeremiah J. Morgan*