IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| MISSOURI INSURANCE COALITION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 4:12 CV 2354 AGF |
| v. | ) ) ) | |
| JOHN M. HUFF, in his official capacity as Director of the Missouri Department of Insurance, Financial Institutions and Professional Registration, | ) ) ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF THE MOTION
TO INTERVENE OF BICK HOLDINGS, INC., *et al.*.**

**INTRODUCTION**

Intervenors Bick Holdings, Inc., Bick Group, Inc., Mary Frances Callahan, Mary Clare Bick, James Patrick Bick Jr., William Joseph Bick, Mary Patricia Davies, Joseph John Bick, Francis Xavier Bick, Mary Margaret Jonz, and Mary Sarah Alexander (collectively, "the Bick Intervenors" or "Intervenors"), are individuals and organizations who object on religious grounds to providing health insurance coverage for abortifacient drugs and devices, contraceptives, and sterilization procedures; and who have filed suit against the federal government invoking the protection of the Religious Freedom Restoration Act ("RFRA") and the Free Exercise Clause, seeking relief from federal regulations mandating employer coverage of health care services. Intervenors' federal lawsuit, *Bick Holdings Inc., et al. v. United States Department of Health and Human Services, et al.*, No. 4:13 CV 462 AGF, is currently pending before this Court. On April 1, 2013, this Court preliminarily enjoined enforcement of the challenged federal regulations ("the

1

Federal Mandate") against the Bick Intervenors and held that case in abeyance pending resolution of related appeals in the U.S. Court of Appeals for the Eighth Circuit. No. 4:13 CV 462 AGF, Doc. 19, at 1 (enjoining federal officials "from applying or enforcing the contraceptive coverage regulations against Bick Holdings, Inc.; Bick Group, Inc.; or their employee health plan(s) or insurer(s)," pending the outcome of two appeals in the Eighth Circuit).

Five business days ago, on April 11, 2013, two surprising and unforeseen developments occurred in the instant case, *Missouri Insurance Coalition, et al. v. Huff*, No. 4: 12 CV 2354 AGF, which immediately threaten to impair or impede the Bick Intervenors' ability to procure the relief they seek in *Bick Holdings*, No. 4:13 CV 462 AGF. On April 11, on behalf of Defendant Huff, the Attorney General of Missouri filed a Rule 59 motion which represented to this Court that (1) the State now concedes that the Missouri conscience protections at issue in this case should be deemed invalid under federal law as applied to religious objectors, like the Bick Intervenors, who are engaged in for-profit business; and (2) the State will not seek to appeal any determination by this Court that Missouri's conscience protections are preempted and invalid with respect to such employers. *See* Doc. 77, at 1 ("Defendant recognizes, and does not seek to relitigate ***or appeal***, this Court's ruling regarding the supremacy of the Affordable Care Act's contraceptive coverage provisions to insurance carriers, businesses and individuals who, by their conduct, have freely chosen to enter the stream of commerce.") (emphasis added); *id.* at 4 ("Defendant … accepts without reargument this Court's decision that federal law preempts conflicting Missouri law as applied to insurance carriers, businesses, and individuals who, by their conduct, have freely chosen to enter the stream of commerce. In short, Walmart may not ignore selective provisions of federal or state law by claiming a religious exemption."). The Bick Intervenors are the "Walmart" to which the State refers—individuals and organizations

2

operating for-profit businesses who claim "a religious exemption," *id.*, to the Federal Mandate, under RFRA and the First Amendment.

The practical impact of these two developments on the Bick Intervenors' pending RFRA lawsuit is driven home by the State's representation that "Defendant would only enforce § 376.1199 consistent with the scope of the Court's declaratory judgment ruling." March 14, 2013 Memorandum and Order, Doc. 68, at 12 ("Order"). Defendant's Rule 59 motion recognizes the adverse effect of the Court's Order on those religiously objecting employers who have been granted an exemption from the Federal Mandate under *federal regulations*, and it seeks to vindicate and protect the rights of such employers; but it disavows the intention to vindicate or protect, either in this Court or on appeal, the rights of religiously objecting employers who have valid exemptions to the Federal Mandate under RFRA and the federal Constitution. Doc. 77, at 1, 4. To the Bick Intervenors' knowledge, this is a brand-new development. In previous filings, prior to the entry of the Order, the State had sought to vindicate and protect the state-law religious conscience rights of for-profit as well as non-profit religious employers. *See* Doc. 48, at 23-29. And, to Intervenors' knowledge, Defendant's Rule 59 motion is the first representation to this Court in which the State has disavowed its intention to appeal from at least part of any final order in this case.

Thus, the Bick Intervenors face an immediate practical obstacle to the relief they seek in *Bick Holdings*—relief which has already been granted, on a preliminary basis, by this Court. Largely for the reasons stated in the Attorney General's Rule 59 motion, the current practical effect of the Order is to deny conscience protections to employers doing business in Missouri, even those who have a valid exemption from the Federal Mandate under federal law. The Attorney General seeks to correct this anomaly, but only with respect to religious non-profit

3

employers exempt under federal regulations, not with respect to religious for-profit employers who are exempt under RFRA and the First Amendment. The State, moreover, has represented that it will seek to enforce Missouri law in accordance with this Court's declaratory judgment. And the State has represented that it will not appeal from a declaratory judgment that provides no protection to religiously objecting for-profit employers. Moreover, the only other potential intervenor in this case is not a for-profit business and has previously been determined by this Court to lack Article III standing.[1] *See* Doc. 45, at 4.

The upshot of all these factors is that the Bick Intervenors are suddenly faced with a situation in which the interests they seek to vindicate in *Bick Holdings* may be effectively adjudicated in their absence, and they may be stripped of conscience rights under Missouri law, even though the validity of their claim to federal conscience rights has been determined to be likely to succeed on the merits in federal court. Moreover, in addition to the Bick Intervenors, several other for-profit religious employers have been granted preliminary injunctive relief against the enforcement of the federal contraceptive mandate in the State of Missouri, and this litigation threatens to frustrate or defeat the purposes of those injunctions, as well as that granted by this Court to the Bick Intervenors. *See, e.g., Am. Pulverizer Co. v. U.S. Dep't of Health & Human Servs.*, No. 12–3459–CV–S–RED, 2012 WL 6951316 (W.D. Mo. Dec. 20, 2012) (granting preliminary injunction); *Sioux Chief Mfg. Co., Inc. v. Sebelius*, No. 4:13-cv-036, ECF Doc. 9 (W.D. Mo. Feb. 28, 2013) (same); *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 2:12–CV–92–DDN, 2012 WL 6738489 (E.D. Mo. Dec. 31, 2012) (granting

---

[1] This Memorandum does not address the propriety of that ruling, though Intervenors respectfully reserve the right to do so.

temporary restraining order). Intervenors, therefore, respectfully request leave to intervene in the instant action, in order that they may file a response to Defendant's Rule 59 motion that asserts their own interests and the interests of similarly situated, religiously objecting employers who are not exempt from the Federal Mandate under federal regulations, but who are or may be exempt under RFRA and/or the First Amendment; and in order that they may file an appeal if necessary.

## ARGUMENT

Intervenors seek both intervention of right and permissive intervention. *See* Fed. R. Civ. P. 24(a), 24(b). For the reasons stated below, both forms of intervention are appropriate.

### A. Intervenors Are Entitled To Intervention Of Right Under Rule 24(a).

Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Rule requires a party seeking intervention as of right to satisfy four criteria: "(1) she has a cognizable interest in the subject matter of the litigation, (2) the interest may be impaired as a result of the litigation, and (3) the interest is not adequately protected by the existing parties to the litigation," as well as (4) "a timely motion." *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007).

#### 1. Intervenors have a cognizable interest in the subject matter of this litigation that may be impaired as a result of the litigation.

As an initial matter, Intervenors have a "cognizable interest" in the outcome of this case. *Id.* A "cognizable interest" is one that is "direct, substantial, and legally protectable." *Id.*

As recounted above, the Bick Intervenors' lawsuit claiming exemption to the Federal Mandate under RFRA and the First Amendment is currently pending in this Court. *Bick Holdings*, No. 4:13 CV 462 AGF. As stated in the Bick Intervenors' pleadings and affidavits filed in that case, of which this Court may take judicial notice and which are herein incorporated by reference, the Bick Intervenors assert religious objections to providing health insurance coverage for abortifacients, contraceptives, and sterilization procedures, which are protected under federal law, and which exempt them from the Federal Mandate requiring coverage of such services. *See, e.g.,* No. 4:13 CV 462 AGF, Doc. 1, Doc. 8, Doc. 9 & Ex. 1. The very same religious-liberty interests they seek to vindicate in the parallel lawsuit are those that, absent this Court's Order, would be protected under state law by Mo. Rev. Stat. § 376.1199.4(1) *et seq.* There can be no dispute that these religious-liberty interests are both "substantial" and "legally protectable." *Allan Curtis*, 485 F.3d 1108.

Furthermore, these interests are "direct[ly]" implicated in this case, *id.*, because the outcome of this case "may as a practical matter impair or impede [Intervenors'] ability to protect [their] interest" in religious liberty. Fed. R. Civ. P. 24(a)(2). As discussed in the Memorandum In Support Of Defendant's Motion To Alter Or Amend The Judgment, Doc. 77, the Court's Order "inadvertently leaves insurance companies unable to sell to religious employers insurance policies that religious employers have been given the right to purchase under federal law." Doc. 77, at 2-3. In particular, as noted in Defendant's Memorandum, *id.*, Mo. Rev. Stat. § 376.1199.1(4) mandates that "[e]ach health carrier or health benefit plan that offers or issues health benefit plans providing obstetrical/gynecological benefits and pharmaceutical coverage … shall … [i]f the health benefit plan also provides coverage for pharmaceutical benefits, provide coverage for contraceptives either at no charge or at the same level of deductible, coinsurance or

co-payment as any covered drug." Absent the conscience protections of Mo. Rev. Stat. § 376.1199.4(1) *et seq.*, and given the State's representations that it will enforce state law in accordance with this Court's declaratory judgment, it appears likely that no health insurance plan shall be available, to Missouri's religiously objecting employers, that "excludes coverage for contraceptives if the use or provision of contraceptives is contrary to the moral, ethical or religious beliefs or tenets of such person or entity." *Id.* This Court's Order declares that § 376.1199.4(1) is facially invalid, and the State has represented that it will enforce that provision in accordance with the Court's declaratory judgment. Accordingly, this case threatens to interpose a practical obstacle that will directly frustrate the relief that Intervenors seek in their currently pending federal lawsuit—namely, the freedom to offer health insurance coverage in accordance with their religious beliefs. Indeed, perhaps most strikingly, the Order in this case directly undermines Intervenors' ability to enjoy the preliminary relief already granted to them by this Court in *Bick Holdings*.

### 2. The Bick Intervenors are no longer adequately represented by the Missouri Attorney General and Defendant Huff.

As noted above, the State has filed a Rule 59 motion seeking partial correction of the inadvertent anomaly in this Court's Order. Defendant's Rule 59 motion, however, expressly disavows any intention to request relief, or appeal, on behalf of religious employers who are exempt from the Federal Mandate under the Free Exercise Clause and/or RFRA, as opposed to federal regulatory exemptions. In particular, the State explicitly asserts that for-profit religious employers, like Intervenors, are not entitled to any protections for religious conscience under either state or federal law:

> Defendant recognizes, and does not seek to relitigate or appeal, this Court's ruling regarding the supremacy of the Affordable Care Act's contraceptive coverage provisions

> to insurance carriers, businesses and individuals who, by their conduct, have freely chosen to enter the stream of commerce....
>
> Defendant ... accepts without reargument this Court's decision that federal law preempts conflicting Missouri law as applied to insurance carriers, businesses, and individuals who, by their conduct, have freely chosen to enter the stream of commerce. In short, Walmart may not ignore selective provisions of federal law or state law by claiming a religious exemption.

Doc. 77, at 1, 4. This represents a novel change in the State's litigation position. Previously, the State had taken the position in this case that "Private Employers Asserting Religious Grounds are Not Subject to the Contraceptive Mandate, and Therefore Subject to SB 749," Doc. 48, at 23, and the State had claimed that "SB 749 cannot be preempted as it applies to these employers." *Id.* Prior to April 11, the State had urged this position thoroughly before this Court. *See, e.g., id.* at 25 ("[T]he provisions of SB 749 apply to private employers that reject contraceptive coverage based on religious grounds."); *id.* ("SB 749 cannot be in conflict with the contraceptive mandate."); *id.* at 27 ("[J]ust because a private employer has entered the commercial marketplace, they have not abandoned all rights to the exercise of religion."); *id.* at 28 ("Although this case is not about whether the ACA's contraceptive mandate violates RFRA ... there are enough courts to have concluded as such to call into question any consideration of a conflict with state law. As such, SB 749, not the ACA contraceptive mandate, applies to private employers that assert moral, ethical, or religious reasons as the basis for rejecting contraceptive services in their fully insured group health plans."); *see also* Order, Doc. 68, at 7-8.

On April 11, 2013, in its Rule 59 motion, the State notified this Court explicitly—and for the first time, to the Bick Intervenors' knowledge—that it has abandoned its defense of the religious conscience rights of for-profit employers, and it openly asserted that it will not seek to "relitigate or appeal" the Court's declaratory judgment to the extent that it fails to preserve the

8

rights of for-profit employers. Doc. 77, at 1. Intervenors, therefore, have suddenly lost their representation by the state official appointed by the Missouri Constitution to defend their state-law conscience rights, at the moment of maximal threat to those rights. In the same moment, they are threatened with the loss of the ability to seek appellate review of a declaratory judgment which, as it currently stands, threatens to impair and impede their ability to enjoy the relief they seek in the parallel *Bick Holdings* litigation.

State officials typically enjoy a presumption of adequate representation because of their charge to represent the public interest, but that presumption "may be rebutted . . . when a would-be intervenor makes a strong showing of inadequate representation." *Mausolf v. Babbitt*, 85 F.3d 1295, 1303-04 (8th Cir. 1996) (permitting conservation groups to intervene in defense of restrictions on snowmobiling in a national park, on the ground that the government did not adequately represent their interests). The presumption may also be rebutted when a party can show that it has a narrow interest in the outcome of a case that is not shared by the general citizenry. *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1000-01 (8th Cir. 1993) (allowing counties and landowners to intervene in a dispute over natural resource laws, reasoning that "[t]he mere fact that the state has interests in land is no guarantee that it will adequately represent the counties and the landowners' interests").

In both *Mausolf* and *Mille Lacs*, the intervenors were allowed to intervene based on the well-grounded possibility that the government's interests might diverge from their own at some future point in the litigation. *See Mausolf*, 85 F.3d at 1303 (finding inadequate representation by the government, and granting intervention as of right, because "in the past, the Government ha[d] waived and failed to enforce regulations" that intervenors sought to defend); *Mille Lacs*, 989 F.2d at 1001 (holding that representation was inadequate, and intervention as of right was

9

appropriate, even though the intervenors' "proposed answers are almost identical to the answer filed by the state," because "there is no assurance that the state will continue to support all the positions taken in its initial pleadings"). Moreover, as the Eighth Circuit observed in *Mausolf*, "even the Government cannot always adequately represent conflicting interests at the same time." 85 F.3d at 1303; *see also Mille Lacs*, 989 F.2d at 1001 ("[W]hat the state perceives as being in its interest may diverge substantially from the [intervenors'] interests."). In this case, the Attorney General has expressly adopted a litigation position that is directly contrary to the interests of religiously objecting employers with valid RFRA and First Amendment claims against the Federal Mandate. This is an even stronger showing of inadequate representation than in *Mausolf* and *Mille Lacs*, where intervention as of right was held to be mandatory due merely to "a potential conflict" between the interests of the intervenors and the government. *Mille Lacs*, 989 F.2d at 1001.

Furthermore, there are no other parties that fully and adequately represent the interest of Intervenors. Proposed intervenor Our Lady's Inn is not a for-profit employer; and more fundamentally, under this Court's previous ruling, Our Lady's Inn ostensibly lacks Article III standing to participate in this case, which at least casts substantial doubt on its ability to present arguments to this Court or to prosecute an appeal. *See* Doc. 45, at 4; *Mausolf*, 85 F.3d at 1299 (holding that "the Constitution requires that prospective intervenors have Article III standing to litigate their claims in federal court").

### 3. The Bick Intervenors' Motion To Intervene Is Timely.

The Bick Intervenors' motion to intervene is timely, because it comes within five business days of the event that made it clear that their interests were no longer adequately represented by the State, within the time allotted by this Court's local rules for the filing of a

10

response to Defendant's Rule 59 motion, and within the time allotted for parties to file a notice of appeal under the Federal Rules of Appellate Procedure.

Considering the timeliness of a post-judgment motion to intervene, the Supreme Court observed that "[t]he critical inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394-96 (1977). In *United Airlines*, the intervenor sought leave to intervene after entry of final judgment, for the purpose of appealing from an adverse decision on class certification that had taken place years earlier in the case. *Id.* at 388. The motion to intervene "was filed within 18 days after the District Court's final judgment, and thus well within the 30-day period for an appeal to be taken." *Id.* at 390. The Supreme Court ruled that the motion to intervene was timely under Rule 24. *Id.* at 395-96. The Court stated:

> The critical fact here is that once the entry of final judgment made the adverse class determination appealable, the respondent quickly sought to enter the litigation. In short, as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests.

*Id.* at 394. In reaching its conclusion, the Court reviewed several lower court decisions involving post-judgment motions to intervene, noting that "[i]nsofar as the motions to intervene in these cases were made within the applicable time for filing an appeal, they are consistent with our opinion and judgment in the present case." *Id.* at 395 n.16 (citing *Pellegrino v. Nesbit*, 203 F.2d 463, 466 (9th Cir. 1953)); *see also In re Grand Jury Proceedings*, 655 F.2d 882, 886 n.2 (8th Cir. 1981). In this case, because the Defendant has filed a Rule 59 motion, the parties have until 30 days after the court disposes of that motion to file an appeal. Fed. R. App. Proc. 4(a)(4)(A)(iv). The Bick Intervenors' motion is being filed well within that time limit. Moreover, for the reasons discussed above, it did not become apparent that the Bick Intervenors

11

were no longer adequately represented until April 11, 2013. Thus, just as in *United Airlines*, the Bick Intervenors "quickly sought to enter the litigation … as soon as it became clear … that the interests of [Intervenors] would no longer be protected." 432 U.S. at 394.

Furthermore, a finding of timeliness in this case is supported by the fact that the Bick Intervenors' motion to intervene will not prejudice any existing parties. *See Mille Lacs*, 989 F.2d at 999 (holding that a motion to intervene filed "eighteen months after suit had been commenced and nine months after the deadline for filing motions to add parties" was timely, in part because the timing of the motion "did not prejudice the existing parties"). The Bick Intervenors seek leave to intervene in order to protect interests and advance legal arguments—during Rule 59 proceedings, and if necessary, on appeal—that are very similar to those which, up until April 11, 2013, were being advanced by the State. Their motion to intervene will not delay proceedings, it will not require the taking of discovery, and it will not even require the parties or the Court to address significant new issues that were not already under consideration in this case. *Cf. United Airlines*, 432 U.S. at 394 ("United can hardly contend that its ability to litigate the issue was unfairly prejudiced simply because an appeal on behalf of putative class members was brought by one of their own, rather than by one of the original named plaintiffs.").

B. **In the Alternative, This Court Should Grant Permissive Intervention.**

In the alternative, this Court should grant the Bick Intervenors permissive intervention under Rule 24(b)(1)(B). That Rule provides that "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." The Rule also provides that "[i]n exercising its discretion" to allow permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "The

principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003).

The criteria for permissive intervention are satisfied in this case. For the reasons stated above, the Bick Intervenors' religious-liberty claims advanced in the parallel *Bick Holdings* case share common questions of law and fact with the questions at issue in this case—namely, whether the Bick Intervenors may provide their employees with health insurance policies that accord with the dictates of their religious conscience. Likewise, for the reasons discussed immediately above, the Bick Intervenors' motion to intervene does not pose any undue delay or prejudice to the resolution of this case. *See United Airlines*, 432 U.S. at 394.

## CONCLUSION

For the reasons stated, the Bick Intervenors respectfully request that this Court grant their motion for leave to intervene, and grant them leave to file their Response To Defendant's Motion To Alter Or Amend The Judgment, which is attached as Exhibit 4 to the Motion To Intervene.

Dated: April 18, 2013

                Respectfully submitted,

By:   /s/ Stephen R. Clark
       CLARK & SAUER, LLC
       Stephen Robert Clark, #41417
       D. John Sauer, #58721 (*)
       7733 Forsyth Blvd., Suite 625
       St. Louis, MO 63105
       Phone: (314) 814-8880
       Fax:    (314) 332-2973
       sclark@clarksauer.com
       jsauer@clarksauer.com

       Francis J. Manion (KY Bar No. 85594) (*)
       Geoffrey R. Surtees (KY Bar No. 89063) (*)
       AMERICAN CENTER FOR LAW &
          JUSTICE
       PO Box 60
       New Hope, KY 40052
       Tel: (502) 549-7020
       Fax: (502) 549-5252
       fmanion@aclj.org
       gsurtees@aclj.org

       (*) *Pro hac vice pending*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2013, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing. Based on the electronic records currently on file, the clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Neal F. Perryman
LEWIS RICE
600 Washington
Suite 2500
St. Louis, MO 63101
314-444-7661
Fax: 314-612-7661
Email: nperryman@lewisrice.com

David W. Gearhart
LEWIS RICE
600 Washington
Suite 2500
St. Louis, MO 63101
314-444-1394
Fax: 314-612-1394
Email: dgearhart@lewisrice.com

Jeremiah J. Morgan
ATTORNEY GENERAL OF MISSOURI
Assistant Attorney General
P.O. Box 899
Jefferson City, MO 65102-0899
573-751-1800
Fax: 573-751-0774
Email: jeremiah.morgan@ago.mo.gov

John M. Reeves
ATTORNEY GENERAL OF MISSOURI
Assistant Attorney General
207 W. High Street
P.O. Box 899

Jefferson City, MO 65102
573-751-4692
Fax: 573-751-9456
Email: john.reeves@ago.mo.gov

Timothy Belz
OTTSEN, MAUZE, LEGGAT & BELZ LC
112 S. Hanley Road, Suite 200
St. Louis, MO 63105-3418
314-726-2800
Fax: 314-863-3821
Email: tbelz@omlblaw.com

Robert T. Haar
HAAR AND WOODS, LLP
1010 Market Street
Suite 1620
St. Louis, MO 63101
314-241-2224
Fax: 314-241-2227
Email: edmofiling@haar-woods.com

/s/ Stephen Robert Clark