UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MISSOURI INSURANCE COALITION, | ) | |
| HEALTH ALLIANCE LIFE INSURANCE | ) | |
| COMPANY, and HMO MISSOURI, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.  4:12CV02354 AGF |
| | ) | |
| JOHN M. HUFF, in his capacity as Director | ) | |
| of the Missouri Department of Insurance, | ) | |
| Financial Institutions, and Professional | ) | |
| Registration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Missouri Insurance Coalition ("MIC"), Health Alliance Life Insurance

Co. ("Health Alliance"), and HMO Missouri, Inc., seek a declaration that certain

provisions of the recently-enacted Missouri Senate Bill 749, codified at Mo. Rev. Stat.

§ 376.1199, are void under the Supremacy Clause of the United States Constitution

because the state law is in direct conflict with the "contraceptive mandate" of the federal

Patient Protection and Affordable Care Act ("Affordable Care Act"), 42 U.S.C.

§ 300gg-13, and its implementing regulations.  Upon review of the record, including the

two amicus curiae briefs filed with the Court, and the parties' oral arguments, the Court

will grant Plaintiffs' request for declaratory judgment.

## BACKGROUND

Plaintiff MIC is a nonprofit consumer education organization representing and promoting the interests of the insurance industry in Missouri.  The other two Plaintiffs are health insurers and members of MIC.  Defendant John Huff is the Director of the Missouri Department of Insurance, Financial Institutions, and Professional Registration ("DOI").

### The Federal Law

The Affordable Care Act provides, in relevant part, as follows:

> [A] group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for . . . with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration ("HRSA") for purposes of this paragraph.

42 U.S.C. § 300gg-13(a)(4).  HRSA guidelines, in turn, require coverage, without cost sharing, for, among other things, "[a]ll Food and Drug Administration [(FDA)] approved contraceptive methods . . . for all women with reproductive capacity."  77 Fed. Reg. 8725 (Feb. 15, 2012).

This "contraceptive mandate" is backed by financial penalties: employers who do not comply face enforcement actions, 29 U.S.C. § 1132(a); a penalty of $100 per day per employee, 26 U.S.C. § 4980D(a)-(b); and an annual tax surcharge of $2,000 per employee.  *Id.* § 4980H(a).  Excluded from the mandate are certain "grandfathered" health plans, 45 C.F.R. § 147.140(c)(1) (2010), and exempted are "religious employers"

as defined at 45 C.F.R. § 147.130(a)(iv)(B) (2011).  The regulatory guidelines include what has been referred to as a "temporary enforcement safe harbor" for plans that do not qualify for the "religious employer" exemption but are sponsored by certain non-profit organizations with religious objections to contraceptive coverage.   77 Fed. Reg. 8725, 8726-8728 (Feb. 15, 2012).  These organizations are exempt from application of the mandate until August 1, 2013, by which time it is expected that new regulations broadening the definition of "religious employer" will be finalized.

The Affordable Care Act has its own pre-emption provision that provides as follows:  "Nothing in this title [Title I of the Act, which includes the preventive services requirement] shall be construed to preempt any State law that does not prevent the application of the provisions of this title."  42 U.S.C. § 18041(d).  The federal law further provides that it "shall not be construed to supersede any provision of State law which establishes, implements, or continues in effect any standard or requirement . . . except to the extent that such standard or requirement prevents the application of a requirement of this part."  42 U.S.C. § 300gg-23(a)(1).

Under the Affordable Care Act, individuals are exempt from the general requirement to obtain health insurance if they are members of a "recognized religious sect or division" that conscientiously objects to acceptance of public or private insurance funds or are members of a "health care sharing ministry."  26 U.S.C. § 5000A(d)(2).

Approximately three months before this action was filed, and again during the pendency of the action, the Eighth Circuit enjoined the enforcement of the federal

3

contraceptive mandate against specific for-profit companies that objected to the mandate on the basis of their religious beliefs, under the Religious Freedom Restoration Act of 1993 ("RFRA").  *See O'Brien v. HHS*, 2012 WL 4481208 (E.D. Mo. Sept. 28, 2012); *Annex Med., Inc. v. Sebelius*, No. 13-1118 (8th Cir. Feb. 1, 2013).  In *Annex Med, Inc*., the appellate Court explained that the granting in these two cases of a stay (*O'Brien*) and a preliminary injunction (*Annex Med., Inc.*) pending appeal necessarily included a conclusion by the appellate Court that the appellants made a sufficient showing of likelihood of success on the merits of their claims.  *Id.*

**The State Law**

Missouri law requires health insurers to submit health insurance policies to the DOI for approval before they may be sold; the DOI may only approve those policies that are in compliance with Missouri law.  If the DOI determines that a health insurer is in violation of state law related to insurance, the DOI may issue an order directing the insurer to cease and desist such conduct, and may impose a civil monetary penalty.  Mo. Rev. Stat. § 374.046.

Subsection 1(4) of § 376.1199 requires health benefit plans that provide coverage for pharmaceutical benefits, to "provide coverage for contraceptives either at no charge or at the same level of deductible, coinsurance or co-payment as any other covered drug." Subsection 4, however, the so-called "opt-out provision," requires Missouri health insurers to honor requests by employers to issue policies excluding coverage for

contraceptives if "the use or provision of such contraceptives is contrary to the [employer's] moral, ethical or religious beliefs or tenets."  Mo. Rev. Stat. § 376.1199.4(1).   Similarly, individual enrollees in a health plan that provides contraceptive coverage can opt-out of that coverage, and health insurers that have their own moral, ethical, or religious tenets contrary to the use or provision of contraceptives are themselves exempt from subsection 1(4).  *Id.* § 376.1199.4(2)-(3).

The statute also provides that health insurers must "allow enrollees in a health benefit plan that excludes coverage for contraceptives . . . to purchase a health benefit plan that includes coverage for contraceptives."  *Id.*  § 376.1199.5.   Subsection 6 requires health insurers to notify enrollees that they have "the right to exclude coverage for contraceptives if such coverage is contrary to his or her moral, ethical or religious beliefs" and that "an enrollee who is a member of a group health benefit plan without coverage for contraceptives has the right to purchase coverage for contraceptives."  *Id.* § 376.1199.6(2)-(3).[1]

**Procedural Posture**

On November 6, 2012, the Insurance Market Division of the DOI filed a "Verified Statement of Charges and Request for Orders," charging Health Alliance and HMO Missouri for being in violation of § 376.1199 by not offering plans excluding coverage for contraceptives.  (Doc. No. 26-2.)  The DOI requested that Huff (Defendant herein)

---

[1]   In addition to the newly added § 376.1199, S.B. 749 also added §191.724, not directly at issue here, to Missouri Revised Statutes.

issue cease and desist orders requiring these Plaintiffs to cease their violations and

requiring them to pay a civil penalty.  *Id.*  The Statement of Charges identified each

charged entity at an address in St. Louis, Missouri.  On November 16, 2012, a cease and

desist order was issued by Defendant.  The present suit for declaratory judgment and

injunctive relief was initiated on December 19, 2012, against Defendant in his official

capacity.

On December 21, 2012, after a hearing, the Court granted Plaintiff MIC's[2] motion

for a Temporary Restraining Order ("TRO") enjoining Defendant from enforcing the

state law in question.  The Court held that Plaintiff was likely to succeed on the merits of

its claim that there was a direct conflict between the state law and the federal law, and

that Defendant could not disapprove health insurance policies, contracts, and forms on

the ground that they were not compliant with the state law.  (Doc. No. 13.)  The parties

thereafter elected to proceed with a consolidated Preliminary and Permanent Injunction

Hearing.

## Arguments of the Parties and Amici Curiae

Plaintiffs in the present case argue that the Missouri statute requiring them to offer

and issue a health plan without contraceptive coverage to employers or persons based on

their moral, ethical, or religious beliefs or convictions "squarely conflicts" with federal

law which, with limited exceptions, requires health insurers like Plaintiffs to provide

---

[2]  At the time of the TRO, the only Plaintiff was MIC.  Health Alliance and HMO
Missouri, Inc. were added as Plaintiffs in an Amended Complaint on January 10, 2013.

contraception coverage without additional cost in all plans issued to individuals and employers.  Plaintiffs' prime argument is that the conflict between the laws is irreconcilable, and health insurers in Missouri cannot comply with both mandates.  Thus, under the Supremacy Clause, the federal law must prevail.  The same result is reached, according to Plaintiffs, under the express preemption provision in 42 U.S.C. § 300gg-23(a) quoted above.  Plaintiffs argue that subsections 4, 5, and 6(2) and (3) of § 376.1199 are invalid and cannot be severed from the entire § 376.1199, which accordingly should be declared invalid in its entirety.

Defendant argues that Missouri law is not in conflict with the federal contraceptive mandate, but rather is "more protective of access to contraceptive services."  Defendant relies on the above-quoted provision of  § 376.1199.5 that an enrollee who is a member of a group health benefit plan without coverage for contraceptives has the right to purchase coverage for contraceptives.  Defendant posits that as this would apply to plans that are exempt from the provisions of the federal law, Missouri law provides more access to contraceptive coverage than the federal law.  In response to the concern that the federal contraceptive mandate requires contraceptive coverage at no additional cost to women, Defendant notes that there is no requirement in § 376.1199.5 that a separate charge be imposed on those enrollees wishing to purchase contraceptive coverage when their health plan excludes such coverage.

Defendant further asserts that there would be no need, in any event, to invalidate the entire statute, contending that the Court should sever any sections of Missouri law

7

that the Court may conclude are invalid, and invalidate only those sections.   Defendant also maintains that the sections challenged by Plaintiffs can be applied to those entities and individuals that are exempt from the federal contraceptive mandate, without creating a conflict with federal law.  Defendant also asks the Court to quash the TRO entered in this case and hold the case in abeyance until the federal government finally revises the safe harbor provision, and the Eighth Circuit lifts its stay and injunction of the federal contraceptive mandate in *O'Brien* and *Annex Med., Inc*.  Defendant acknowledges that this case is not about whether the federal contraceptive mandate violates the RFRA, but argues that the likelihood that the federal mandate does violate the RFRA in various cases "calls into question any consideration of a conflict with state law."  Defendant concludes by maintaining that the basic goals of the federal and state laws are the same – access to contraceptive services while protecting moral, ethical, and religious beliefs – and that Missouri law "does this precisely and does not prevent the application of federal law."

Amicus Curiae Our Lady's Inn states that it is a religious organization that is exempt from the federal contraceptive mandate under the safe harbor regulation.  It argues that the federal exemptions to the mandate "reveal a shared motive with the Missouri statute: respecting the rights of those who object to providing their employees with contraceptives.  The Missouri statute simply gives the objectors a mechanism to enforce their rights against insurance companies that want to force one-size-fits-all plans on their insureds."  Our Lady's Inn argues that "[i]f there are any inconsistencies

[between the federal and state laws], which is unlikely, Section 376.1199 should be invalidated only 'to the extent' of the inconsistency."

The second Amicus Curiae in the case is America's Health Insurance Plans ("AHIP"), a national trade association representing the health insurance industry, some of whose members provide health insurance in Missouri.  AHIP argues, as do Plaintiffs, that § 376.1199 imposes requirements on health insurers that directly conflict with the federal mandate that health insurers and group health plans provide contraceptive coverage without any cost-sharing requirements to women.  By complying with Missouri's requirements, health insurers would unavoidably violate the federal contraceptive mandate.  AHIP notes that the exemptions to the federal mandate are not congruent with Missouri's conflicting state-law requirements.  For example, by permitting employers with any "religious ethical or moral" objection to contraceptive coverage to opt out of providing such coverage, Missouri provides a broader exemption than the federal exemption for "religious employers."

AHIP urges the Court to reject Defendant's request to hold this case in abeyance pending resolution of the cases brought by employers under the RFRA, because however these actions are resolved, they will not eliminate the conflict that exists between the Affordable Care Act and Missouri law.

As the Court noted in the Order granting the TRO, the issue here is not whether it is or is not proper either to require contraceptive coverage or to require that insurers

allow one to opt out of contraceptive coverage.  Rather, the issue here is a legal issue of federal pre-emption under the Supremacy Clause.

## DISCUSSION

"The Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law."  *Qwest Corp. v. Minn. Pub. Utils. Comm'n*, 684 F.3d 721, 726 (8th Cir. 2012) (citations omitted).  The Supremacy Clause comes into play where, among other situations, "there is an actual conflict between state and federal law" such that "compliance with both federal and state regulations is a physical impossibility . . . or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Id.* (citations omitted). Federal regulations, like those at issue in this case, have the same preemptive force as federal laws.  *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

Here, the federal law and regulations, with limited exceptions, provide that insurers must provide contraceptive coverage, without cost-sharing by an insured.  The State law says that insurers cannot provide contraceptive coverage to any person or entity that objects to such coverage based on any moral, ethical, or religious objection.  The Court is hard-pressed to see how this does not create a direct conflict for Missouri health insurers.  The Court rejects Defendant's argument that the state law does not conflict with the federal law because the state law provides more coverage for contraceptives.  The state law, however, does not provide more coverage-without-cost-sharing, the kind of coverage mandated by the Affordable Care Act.

10

The Court also rejects Defendant's request to hold this case in abeyance pending resolution of cases challenging the federal contraceptive mandate of the Affordable Care Act under the RFRA, and/or pending finalization by the federal government of the scope of the "religious employers" exception. This case is not about whether the federal contraceptive mandate of the Affordable Care Act violates RFRA. Furthermore, the Missouri law in question encompasses moral and ethical beliefs of an employer, enrollee, and health insurer, whereas challenges under the RFRA are limited to a party's religious beliefs.

A delay in deciding the issue now before the Court would allow Defendant to continue enforcing a state law that is in conflict with, and preempted by, existing federal law, and force health insurers to risk fines and penalties by choosing between compliance with state or federal law. The Court notes that Defendant has been unwilling to defer enforcement of Missouri's challenged law during the abeyance he requests.

The Court agrees with Defendant that certain portions of § 376.1199 are not pre-empted by the Affordable Care Act. Specifically, the Court concludes that subsections 1(2), 1(3), 2, 3, 6(4), and 6(5) are not pre-empted. Although the Court agrees with Defendant that subsections 4, 5, and 6(1), (2) and (3) of § 376.1199 can be applied in situations where a federal exception to or exemption from the provisions of the Affordable Care Act exists without running into pre-emption problems, that is not what the state law says, and accordingly, this Court must declare those subsections invalid. With the invalidation of subsections 4, 5, and 6(1), (2) and (3) of § 376.1199, subsection

11

1(4) must also be declared invalid, so that health insurers in Missouri can offer health benefit plans that do not have contraceptive coverage, to entities that are excepted or exempt from the federal contraceptive mandate.  As the parties correctly note, with the invalidation of subsection 4, subsection 1(4) becomes inconsistent with and therefore is preempted by federal law, to the extent it would preclude entities exempted from the Affordable Care Act from purchasing policies without contraceptive coverage.

## CONCLUSION

In sum, the Court concludes that subsections 1(4), 4, 5, 6(1), 6(2), and 6(3) of § 376.1199 are pre-empted by the federal Affordable Care Act and its implementing regulations.  The Court takes no position on the merits of the conflicting laws.  The Court further concludes that under the circumstances of this case, an injunction is not needed based on Defendant's representations that Defendant would only enforce § 376.1199 consistent with the scope of the Court's declaratory judgment ruling.

Accordingly,

**IT IS HEREBY DECLARED** that subsections 1(4), 4, 5, and 6(1), 6(2), and 6(3) of Missouri Revised Statutes § 376.1199 are invalid.  The Court assumes that Defendant's commitment not to enforce any provisions found unconstitutional requires the State of Missouri to withdraw any administrative complaints filed against health insurers for violations of the provisions of the state law at issue.

12

A separate Judgment shall accompany this memorandum and Order.


_Audrey G. Fleissig_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of March, 2013