**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| MISSOURI INSURANCE COALITION, a Missouri non-profit corporation, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Cause No.: 4:12-cv-02354-AGF ) |
| JOHN M. HUFF, in his official capacity as Director of the Missouri Department of Insurance, Financial Institutions and Professional Registration, | ) ) ) ) ) ) |
| Defendant. | ) |

**PLAINTIFFS' RESPONSE TO SUPPLEMENTAL MEMORANDA RE MOTIONS TO INTERVENE OF OUR LADY'S INN AND BICK HOLDINGS, INC., *ET AL.***

**I.    INTRODUCTION**

Pursuant to an Order dated May 22, 2013 (Doc. No. 89), proposed intervenors Our Lady's Inn ("OLI") and Bick Holdings, Inc., *et al.*[1] (collectively, the "Proposed Intervenors") each filed a supplemental memorandum in support of their respective pending motions to intervene. (*See* Doc. Nos. 92 and 93.) As this Court is aware, this is OLI's second such motion; its first motion to intervene was denied much earlier in this litigation. (Doc. No. 45.) Plaintiffs respond to the Proposed Intervenors' supplemental memoranda, as permitted by the Court, below.

By way of background, and as set forth in Plaintiffs' prior responses to the Proposed Intervenors' pending motions to intervene in this action (Doc. Nos. 75 and 86), the Proposed

---

[1] The proposed intervenors are: Bick Holdings, Inc., Bick Group, Inc., Mary Frances Callahan, Mary Clare Bick, James Patrick Bick Jr., William Joseph Bick, Mary Patricia Davies, Joseph John Bick, Frances Xavier Bick, Mary Margaret Jonz, and Mary Sarah Alexander (collectively, "Bick Holdings").

Intervenors' motions should be denied, and nothing within the supplemental memoranda changes that result at this late hour. Each of the Proposed Intervenors lack standing, the failure to appeal (or the filing of an appeal) by the Defendant is not enough in this case to justify their intervention, and their motions to intervene are untimely, among other failures necessary for intervention under Federal Rule of Civil Procedure 24, as fully explained in Plaintiffs' prior responses.

In point of fact, the practical result of the Court's most recent Memorandum and Order (Doc. No. 90) and the accompanying amended Judgment satisfies the Proposed Intervenors' central, expressed concern concerning the Missouri contraceptive mandate that arguably resulted following the Court's initial Judgment, and each of the Proposed Intervenors has acknowledged as much in their supplemental memoranda. (*See* Doc. No. 92 at 1; Doc. No. 93 at 2.)

Some additional comments deserve mention at the outset. OLI seems to be back to the point of beginning in its intervention efforts. (Doc. No. 93.) Its main concern at this stage seems to be a lack of a state law *requiring* insurers to provide coverage without contraception coverage if an exemption from the federal contraceptive mandate exists, and what might happen hereafter. (Doc. No. 93 at 2 (complaining about "the right to make sure that health insurance companies provide policies…..").) On this score, OLI has never fully acknowledged (even though the facts have been presented to the Court) that one of the Plaintiffs is currently providing health insurance coverage to OLI (*post* the TRO in this case temporarily invalidating significant portions of Section 376.1199) *without* contraceptive coverage and *without* elective abortion coverage, pursuant to federal law. (*See* Doc. No. 75 at 6 & Ex. 1.) In any case, the Court has already addressed this contention for intervention on grounds of standing in denying OLI's first such motion: OLI's "supposition that if implementation of the state law is enjoined, insurance companies will not provide, even to exempted companies, plans that exclude contraceptive

coverage is mere speculation." (Doc. No. 45 at 4.) This Court's prior ruling should have meaning, and the arguments to the contrary should be barred by the law of the case doctrine at a minimum.[2]

Bick Holdings makes the same argument, and the result should be the same. Bick Holdings' concerns, post-amended Judgment, include that, because there may be an appeal by one of the parties, the current parties will not represent their interests, and though Bick Holdings may or may not wish to appeal, invalidated Missouri state law would have forced insurers to offer contraception-free coverage, but no such law exists anymore. (Doc. No. 92 at 4.) Again, this is the essentially the same argument previously advanced and rejected this Court when addressing OLI's first intervention motion.

In sum, the respective intervention motions should be denied for a variety of reasons.

## II. ARGUMENT

**A.  Each of the Proposed Intervenors Lack Standing.**

As explained in prior briefing, and as this Court has previously ruled, a lack of standing will defeat both mandatory and permissive intervention under Rule 24. *See United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009); *see also* Doc. No. 45 at 3-4 (discussing standing requirement).

---

[2] The "law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Maxfield v. Cintas Corp.*, 487 F.3d 1132, 1134-35 (8th Cir. 2007); *UniGroup v. Winokur*, 45 F.3d 1208, 1211 (8th Cir. 1995) ("The doctrine of the law of the case precludes litigation of matters that are decided implicitly, as well as those decided explicitly."). "This doctrine prevents the relitigation of settled issues in a case, thus protecting the settled expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency." *Maxfield*, 487 F.3d at 1135; *UniGroup*, 45 F.3d at 1211. A court should reconsider a previously decided issue "***only if*** substantially different evidence is subsequently introduced or the decision is clearly erroneous or works a manifest injustice." *Maxfield*, 487 F.3d at 1135 (emphasis supplied). The Proposed Intervenors have not suggested either.

As previewed above, in this Court's Memorandum and Order denying OLI's first motion to intervene (Doc. No. 45), the Court held that OLI lacked standing to intervene. It did so because OLI's primary contention – that if implementation of the relevant state law were enjoined, insurance companies would not provide plans that exclude contraceptive coverage, even to companies entitled to federal exemptions from PPACA – was "mere speculation." (Doc. No. 45 at 4.) The Proposed Intervenors' rationale for their attempt to intervene is nearly identical. OLI, as already explained, makes nearly the same argument now that the Court already rejected. (Doc. No. 93 at 1.)

Bick Holdings also earlier contended that if they win their pending RFRA case, "it *appears* likely that no health insurance plan shall be available . . . to Missouri's religiously objecting employers." (Doc. No. 81 at 7 (emphasis added).) They contend the same thing now, albeit contingent on their winning another lawsuit that is in its infancy. (Doc. No. 92 at 4.)[3]

In the end, how Missouri insurers might treat the Proposed Intervenors specifically in a future circumstance, and what laws may govern their conduct, is not a question germane to the resolution of this case, which, again, concerns Missouri health *insurers* subjected to conflicting state and federal laws. This Court has already declared that this "action does not relate to companies that the Affordable Care Act exempts from its contraceptive coverage mandate." (Doc. No. 45 at 4; *see also* Doc. No. 90 at 11 ("[t]his case is not about whether…").) To the extent the Proposed Intervenors believe that insurers are acting contrary to their rights, they would have the right to raise those arguments in different legal challenges.

The Proposed Intervenors lack standing here.

---

[3] As previously argued (and as shown by the authority cited) by Plaintiffs (Doc. No. 86 at 3-4), Bick Holdings' position is even more speculative as it is also contingent upon the outcome of another action, namely their RFRA challenge.

**B.      Proposed Intervenors' Motions Are Untimely.[4]**

It bears repeating that "[t]imeliness" under Rule 24 is a matter committed to the discretion of the trial court, and the trial court's determination can be reversed only if it is an abuse of discretion. *Associated Milk Producers, Inc.*, 534 F.2d at 115. Factors relevant to a determination of timeliness include "how far the litigation had progressed at the time of the motion for intervention, the prospective intervenor's prior knowledge of the pending action, the reason for the delay in seeking intervention, and the likelihood of prejudice to the parties in the action." *Minn. Milk Producers Assoc. v. Glickman*, 153 F.3d 632, 646 (8th Cir. 1998). Moreover, "[t]he general rule is that motions for intervention made after entry of final judgment will be granted only upon a ***strong showing of entitlement and of justification for failure to request intervention sooner***." *Associated Milk Producers, Inc.*, 534 F.2d at 116 (emphasis added).

As previously explained, the Eighth Circuit has repeatedly affirmed the denial of such motions as untimely in circumstances such as those presented by the Proposed Intervenors here. (*See* Doc. No. 86 at 7-8 (collecting cases).) "Where, as here, the matter has proceeded to judgment and beyond … and the party seeking to intervene knew or should have known of the suit from its inception, there is simply no basis to find the Motion to Intervene timely, and thus, no basis to allow intervention." *Falcon Steel, Inc. v. J. Russell Flowers, Inc.*, 2010 U.S. Dist. LEXIS 43061, *6 (W.D. Ark. Mar. 31, 2010).

For sound reasons, this Court denied OLI's first intervention motion (among other reasons) because of a lack of timeliness, though it was filed on January 24, 2013, *before* the final

---

[4] Timeliness, like standing, is a prerequisite for intervention as of right and for permissive intervention. *See United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 115 (8th Cir. 1976); FED. R. CIV. P. 24(a) & 24(b)(1).

hearing in this matter, and *well before* a final Judgment was entered on March 14, 2013. (*See* Doc. No. 45 at 4-5.)

Bick Holdings' RFRA case was filed March 13, 2013, (4:13 CV 462 AGF, Doc. No. 1), one day before the original Judgment was entered in this case (Doc. No. 69), even though the PPACA mandate became effective August 1, 2012. Bick Holdings' intervention motion was not filed until April 18, 2013, (Doc. No. 80), after the appeal deadline would have run from the original March 14, 2013 judgment, and in the midst of post-Judgment, Rule 59 briefing. Bick Holdings do not assert in their motion papers that there were unaware of this litigation earlier. (Doc. No. 81, *passim*.) Had either of the Proposed Intervenors wished to attempt to intervene here, they should have tried to do so earlier. This Court has already recognized the delay that intervention would cause, even as to OLI's earlier filed motion. (Doc. No. 45 at 4.) The later motions are similarly, obviously, not timely.

Moreover, neither of the Proposed Intervenors address the substantial delay (and, thus, prejudice) if the Proposed Intervenors were permitted to intervene at this late hour. In terms of Bick Holdings, a final determination as to whether the Proposed Intervenors ultimately will be found exempt from the PPACA contraceptive mandate, which is the necessary predicate for the Rule 24-required interest and impairment of interest that they claim in their motion papers, is still *far* off. The Proposed Intervenors' RFRA case is in its very early stages. (*See* Docket, 4:13 CV 462 AGF.). Indeed, the RFRA case has been stayed, by consent, pending the Eighth Circuit's resolution of other cases. (4:13 CV 462 AGF, Doc. No. 19.) Until Bick Holdings' RFRA case is finally adjudicated, it cannot be determined if they qualify for an exemption from the federal contraception mandate and, therefore, it cannot be determined whether the concerns expressed by Bick Holdings about the impact of the Court's Judgment in this case will even matter. Stated another way, if Bick Holdings does not win its RFRA case, then there is no basis or reason for its

involvement here because it will be subject to the PPACA contraceptive mandate. Thus, if allowed to intervene, it would seem that this case would have to be put on hold for an indefinite period of time until the challenges in the RFRA case (or in a mini-RFRA trial in this case) are determined. Notably, this Court has already rejected the notion that this case be delayed pending "resolution of cases challenging the federal contraceptive mandate," and for good reason. (Doc. No. 68 at 10-11.) Given that the determination of the rights and parties in the RFRA case is not complete or (likely) even imminently so, the result of the Proposed Intervenors' request "at this point will undoubtedly cause delay." (Doc. No. 45 at 4.)

With respect to OLI, allowing intervention also would cause delay. OLI does not explain why all evidence it cites in support of its "interest" in this case should be accepted at face value (especially for purposes of an appeal). If OLI is allowed to intervene, there could be important fact-finding for this Court in relation to OLI's health plan and contraception coverage. Although it seems clear from previously submitted evidence that OLI currently enjoys a federal exemption from the contraception mandate of PPACA and that its health plan does not provide coverage for contraception or elective abortions (Doc. No. 75 at 6 & Ex. 1), such facts directly relate to OLI's standing and the claims it is making in support of intervention. Nevertheless, such evidence (and any evidence OLI may want to submit in rebuttal or to amplify, and Plaintiffs' investigation of OLI's factual claims regarding the nature of its beliefs, etc.) has not undergone any final judicial fact-finding. Allowing intervention now, at this very late hour, may well result in the need for additional fact-finding and further delay.

Also in terms of prejudice, if for some reason the Defendant decided not to appeal, Plaintiffs (and the MIC's insurer members) naturally have an interest in enjoying the finality of the dispute and moving on in the marketplace with clear guidance of which law applies. The certainty of the Court's ruling also allows other Missouri insureds, employers and insurers to

understand their rights, whereas, before, conflict and uncertainty existed.  These interests are completely ignored by the Proposed Intervenors, and their individual agendas should not prevail over this prejudice.  *See Curry*, 167 F.3d at 423 ("[T]he fact remains that a federal case is a limited affair, and not everyone with an opinion is invited to attend.").

Further, Plaintiffs should not be forced to defend an appeal by the Proposed Intervenors (who *now* state they do not even know if they would appeal) if the Defendant does not in fact appeal, which would result in an appeal otherwise not forthcoming.  Defending such an appeal, alone, would further delay the (truly) final adjudication of Plaintiffs' rights.  The Proposed Intervenors' speculative and individualized concerns should not be allowed to trump the resulting, actual prejudice which would result to the Plaintiffs (and the marketplace) through a prolonged appeal by the Prosposed Intervenors (only) and additional uncertainty for all Missouri insureds, employers and insurers while that appeal is pending.

C. **Anyone Disappointed by a State's Failure to Appeal is Not Entitled to Intervene.**

Proposed Intervenors' request to appeal as of right should be denied for an additional reason.  In order to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a), one of the things the proposed intervenor must show is that its interests are not adequately protected by existing parties to the litigation.  *Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997) (the intervenor bears this burden).  As the Eighth Circuit has made clear, when governmental agencies are involved, that is a *high* standard:

> if an existing party to the suit is charged with the responsibility of representing the intervenor's interests, a presumption of adequate representation arises.  [Citation omitted]  When one of the parties is an arm or agency of the government, acting in a manner of sovereign interest, the governmental entity is presumed to represent the interests of its citizens as *parens patriae*, or "parent of the country."

*Id* at 187.  Thus, courts "presume that the government entity adequately represents the public, and we require the party seeking intervention to make a strong showing of inadequate

representation." *Little Rock Sch. Dist. v. North Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004).

This makes perfect sense. As one court recently noted:

> [T]o permit private persons and entities to intervene in the government's defense of a statute upon only a nominal showing would greatly complicate the government's job. Faced with the prospect of a deluge of potential intervenors, the government could be compelled to modify its litigation strategy to suit the self-interested motivations of those who seek party status, or else suffer the consequences of a geometrically protracted, costly, and complicated litigation.

*Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013).

To meet the high threshold of demonstrating inadequate representation by the government, a proposed intervenor can show that "its interests are distinct and cannot be subsumed within the public interest represented by the government entity" or show that "its interests at risk in the litigation are not shared by the general citizenry." *Little Rock Sch. Dist.*, 378 F.3d at 780; *see also Chiglo*, 104 F.3d at 188 (intervenor may rebut presumption by showing government committed misfeasance or nonfeasance in protecting the public).

"Absent this sort of clear dereliction of duty [by the government], however, the proposed intervenor cannot rebut the presumption of representation by merely disagreeing with the litigation strategy or objectives of the party representing him." *Chiglo*, 104 F.3d at 188; *see also Little Rock Sch. Dist.*, 387 F.3d at 780 (same); *see also Jones v. Prince George Cnty., Md.*, 348 F.3d 1014, 1020 (D.C. Cir. 2003) ("If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning."). As such, "proposed intervenors must show something more than mere failure to appeal." *Chiglo*, 104 F.3d at 188.

For example, in *Little Rock Sch. Dist.*, at issue was an underlying dispute over whether a state board of education decision violated a settlement agreement and various federal court orders regarding desegregation. *Little Rock Sch. Dist.*, 387 F.3d at 778-79. The proposed

9

intervenor was initially denied intervention, but was allowed to file an *amicus curiae* brief. *Id.* at 779. The positions advocated by the proposed intervenor were also argued by the state. *Id.* at 781. Ultimately, the state board of education's decision was overturned by the court, but the state did not appeal. *Id.* The proposed intervenor appealed the denial of its intervention effort. *Id.* at 778-79. In affirming the intervention denial, the Eighth Circuit reaffirmed the high burden that the proposed intervenor must meet in demonstrating the state did not adequately represent its interests. *Id.* at 780. The court also upheld its earlier admonition in *Chiglo* that a mere failure to appeal is not enough to meet that burden. *Id.* The court reasoned in pertinent part:

> [W]e conclude that the state directly represented the [intervenor's] asserted interest by seeking to proceed with the election pursued by its citizens under state law and by specifically adopting the positions advanced by [the intervenor]. The state received a fair and full consideration of its position, and it lost. That the [intervenor] has asserted its interest with arguably greater fervor than has the state and would have made different procedural choices, including a decision to appeal, does not make its interest distinct.

*Id.* at 781. Such reasoning directly supports denial of the motions to intervene in this case.

Here, both Proposed Intervenors highlight the *potential* that the Defendant-State may not appeal (and Bick Holdings also argues that, even if the State does appeal, the State would not represent its position as a for-profit employer anymore). Just like in *Chiglo* and *Little Rock School District*, however, neither Proposed Intervenor has made a showing of any other factor suggesting an inadequate representation. True, both Proposed Intervenors worry that the State no longer will advocate that federal law does not preempt Section 376.1199 for entities exempt from the federal contraceptive mandate (for whatever reason) as the Proposed Intervenors believe. (*See* Doc. No. 92 at 4 (Bick Holdings) ("There is no conflict between federal law and [§ 376.119.4(1)] as it applies to entities exempt from the federal mandate (under RFRA or otherwise)."); Doc. No. 93 at 1 (OLI) (OLI "continues to maintain that the Court should resolve any conflict … by ruling that the challenged Missouri provisions are preempted only to the

extent that the entities and individuals Missouri has sought to protect are required to provide or obtain contraceptive coverage under federal law.").)  That argument, however, was *the primary* argument the Defendant–State made to uphold the viability of Section 376.1199, even for an employer without a RFRA challenge.  (*See*, *e.g.*, Doc. No. 70 at 30-31, 35-39, 51-53.)  The Defendant received a fair consideration of those arguments (and OLI even was allowed to submit an *amicus curiae* brief further outlining its positions).  Far from having a distinct interest from the Defendant, the Proposed Intervenors' interest was the same and, as such, it has not overcome the presumption against adequate representation by the State merely because of a difference of litigation or appellate strategy now.

> Indeed, as one court notes,
>
> Nor could it be any other way.  There will often be differences of opinion among lawyers over the best way to approach a case.  It is not unusual for those who agree in principle to dispute the particulars.  To have such unremarkable divergences of view sow the seeds for intervention as of right risks generating endless squabbles at every juncture over how best to proceed.  There is much to be said, frankly, for simplifying rather than complicating the litigation process.

*Stuart*, 706 F.3d at 354.

### III.  CONCLUSION

The Proposed Intervenors' motions must be denied.  "This case is not about whether the federal contraceptive mandate of the Affordable Care Act violates RFRA."  (Doc. No. 90 at 11.)  It is not about the contraceptive mandate requirements that Missouri may wish to legislate consistent with federal law.  If persons/entities like the Proposed Intervenors think there is a resulting gap or something statutorily unfavorable to them *vis-a-vis* their concern about the federal contraceptive mandate or the resulting Missouri law in light of this Court's ruling, their remedy is to seek a new legislative solution, or to file their own action to try to protect their religious beliefs (as Bick Holdings has done).  Their request to have this Court act as a

legislature for them *in this case*, based on unsupported facts of how insurers may act in the future, however, is not appropriate.

For all of the foregoing reasons, the Proposed Intervenors' motions should be denied.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By: /s/ Neal F. Perryman
Neal F. Perryman, #43057MO
David W. Gearhart, #50292MO
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: 314-444-7600
Facsimile: 314-612-7394
E-mail: nperryman@lewisrice.com
E-mail: dgearhart@lewisrice.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

       The undersigned certifies that a true and correct copy of the foregoing Response was filed electronically with the Clerk of Court and served by operation of the Court's electronic filing system upon the following on June 12, 2013:

Jeremiah Morgan
Deputy Solicitor General
PO Box 899
Jefferson City, MO 6510
jeremiah.morgan@ago.mo.gov

Attorneys for Defendant

Timothy Belz
Ottsen, Leggat and Belz, L.C.
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
tbelz@omlblaw.com

Attorney for OLI

Stephen Robert Clark
D. John Sauer
CLARK & SAUER, LLC
7733 Forsyth Blvd., Suite 625
St. Louis, MO 63105
Phone: (314) 814-8880
Fax: (314) 332-2973
sclark@clarksauer.com
jsauer@clarksauer.com

Francis J. Manion
Geoffrey R. Surtees
AMERICAN CENTER FOR LAW & JUSTICE
PO Box 60
New Hope, KY 40052
Tel: (502) 549-7020
Fax: (502) 549-5252
fmanion@aclj.org
gsurtees@aclj.org

Attorneys for Bick Holdings

                                                              /s/ Neal F. Perryman